**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Robert Lee SHAFFER, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 15, 1998.

Filed April 20, 1998.

Vincent P. Nudi, Asst. Dist. Atty., Erie, for the Com., appellant.

Robert A. Sambroak, Jr., Erie, for appellee.

Before TAMILIA, JOHNSON and BROSKY, JJ.

BROSKY, Judge.

This is an appeal by the Commonwealth from an order suppressing evidence gathered after a stop of appellee in New York State. The Commonwealth raises one issue for our determination, whether the court erred in applying a "good faith" exception found in the New York Close Pursuit statute. We affirm.

The facts relevant to the present case are neither complicated nor contested. At approximately 2:38 A.M. on March 15, 1997, Trooper David Cannon of the Pennsylvania State Police observed a vehicle driven by appellee travelling at a high rate of speed on Route 5 in northeastern Pennsylvania not far from the New York State border. Trooper Cannon began following appellee and was able to ascertain his speed at approximately eighty-five (85) miles-per-hour (mph) in a fifty-five mph zone. Trooper Cannon activated his police lights and siren in an effort to get appellee to pull his vehicle over. However, appellee continued for approximately two miles until approximately .7 mile into New York at which point he stopped and Trooper Cannon approached his vehicle.

Trooper Cannon subsequently requested appellee to perform field sobriety tests which, in the judgment of Trooper Cannon, appellee failed. Appellee was then placed under arrest and transported back to Pennsylvania and charged with, inter alia, Driving Under the Influence. Appellee filed a motion to suppress based upon a violation of the New York Uniform Act on Close Pursuit, CPL 140.55. That Act provides, in relevant part:

2. Any peace officer of another state of the United States, who enters this state in close pursuit and continues in this state in such close pursuit of a person in order to arrest him, shall have the same authority to arrest and hold in custody such person on the ground that he has committed a crime in another state which is a crime under the laws of the state of New York, as police officers of this state have to arrest and hold in custody a person on the ground that he has committed a crime in this state.

3. If an arrest is made in this state by an officer of another state in accordance with the provisions of subdivision two, he shall without unnecessary delay take the person arrested before a local criminal court which shall conduct a hearing for the sole purpose of determining if the arrest was in accordance with the provisions of subdivision two, and not of determining the guilt or innocence of the arrested person. If such court determines that the arrest was in accordance with such subdivision, it shall commit the person arrested to the custody of the officer making the arrest, who shall without unnecessary delay take him to the state from which he fled. If such court determines that the arrest was unlawful, it shall discharge the person arrested.

As is readily apparent, the Act in question grants authority to make an arrest in New York State to a police officer of another state when that officer follows a person into New York in "close pursuit" for purposes of making an arrest. However, that Act requires that the officer making the arrest take the person arrested in New York State before a local criminal court "without unnecessary delay" whereupon the local court "shall conduct a hearing for the sole purpose of determining if the arrest was in accordance with the provisions of subdivision two, . . . ." (Relating to close pursuit.) With the Commonwealth conceding a violation of the Act, the trial court granted appellee's motion to suppress over the Commonwealth's argument that the court should apply New York's "good faith" exception caselaw. The case

was certified for appeal and the present appeal followed.

 In our opinion the present case turns upon concepts of jurisdiction and sovereignty. There seems to be no question that Pennsylvania police officers are without inherent jurisdiction to make an arrest in New York State. See, generally, *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1878), Opinion in Support of Reversal, *Commonwealth v. Stair,* 548 Pa. 596, 699 A.2d 1250 (1997), *Commonwealth v. England,* 474 Pa. 1, 375 A.2d 1292 (1977), and 5 Am.Jur.2d §§ 69–72.[1] Thus, the jurisdiction or authority of Trooper Cannon to make an arrest in New York State, if any, is gained only through the grace of New York State. That grace, in this instance, is found in the New York version of the reciprocal or uniform Act on close pursuit. There also seems to be no dispute that the New York Close Pursuit Act was violated. Under the terms of the Act, an individual arrested in New York by an out-of-state-police officer after being closely pursued into New York must be taken before a local criminal court which shall conduct a hearing to determine if the arrest was in compliance with the Act. Since Trooper Cannon did not take appellee in front of a local criminal court to determine if the arrest complied with the Act, the arrest violated New York's Close Pursuit Act and was therefore unlawful.[2] The more significant question is what is the appropriate remedy for appellee's "unlawful" arrest.

 The Commonwealth argues that since the New York Close Pursuit Act gov-

1. Note, however, that at common law an officer may pursue a suspected felon into another jurisdiction in order to effectuate an arrest. 5 Am. Jur. § 72. Of course, appellee did not commit a felony in the presence of Trooper Cannon and this common law doctrine would not apply even if it is still considered valid today.

2. Although it seems likely that had Trooper Cannon complied with the Act and taken appellee in front of a local criminal court the arrest would have been validated by the New York court, we do not view ourselves as empowered to make that determination, nor can we view the violation of the Act as merely "technical" because it would likely have been ruled lawful. As stated above, Trooper Cannon's authority to arrest in New York comes solely from the New York Act. Under

that Act New York has, in effect, reserved the right to adjudicate an extraterritorial arrest by an out-of-state officer valid or invalid. There does not appear to be any provision in the Act which can extend this authority to courts of other states.

Thus, although a police officer closely pursuing a suspect into New York for the commission of a crime in the police officer's state which is also a crime in New York would operate under an apparent grant of authority, that authority would be essentially conditional authority subject to final validation by the New York criminal courts. If not validated by a local criminal court, as contemplated under the Act, that authority would have to be deemed void *ab initio,* and therefore the arrest would be without legal authority.

erns the legality of the arrest, then New York caselaw should be applied as to deter- mining the appropriate remedy for the viola- tion. Since the Commonwealth is putting forth this argument it is not surprising that New York courts have at least twice refused to suppress evidence where close pursuit statutes were seemingly violated.[3] We can- not agree. Although it is quite proper to defer to New York law to determine whether or not the New York Statute has been com- plied with, there is no reason to refer or defer to New York law to determine policy matters relating to proper remedy for an unlawful arrest of a Pennsylvania resident by a Pennsylvania police officer for crimes com- mitted in Pennsylvania.[4] It is really a mat- ter of sovereignty. Pennsylvania courts and Pennsylvania law must govern the rights of a Pennsylvania resident arrested by Pennsyl- vania police officers for crimes committed in Pennsylvania, even if the arrest is effectuat- ed in New York State, not New York courts or New York law. We do not want or need New York law governing the rights of our citizens, or those committing affronts to our citizenry, any more than New York wants or needs our law governing their citizenry or affronts to their citizenry. As a matter of accountability, sovereignty and simplicity, it is for Pennsylvania to dictate how its police officers are to carry out their duties and the consequences for violating such dictates. The remedy for an illegal arrest in Pennsyl- vania is suppression of the fruits of the illegal arrest. *See, Commonwealth v. Price,* 543 Pa. 403, 672 A.2d 280 (1996), and *Commonwealth v. Brandt,* 456 Pa.Super. 717, 691 A.2d 934 (1997). Although New York State may be willing to excuse "good faith" violations of police illegality, Pennsylvania has not yet

embarked upon that potentially "slippery slope."[5] To reiterate, Pennsylvania courts must be empowered to implement the reme- dy of suppression for illegal arrests by its police officers, even if the arrest occurs out- side Pennsylvania's borders after a "hot pur- suit," if they are to maintain the accountabili- ty they have up till now demanded of police officers. Consequently, the trial court below properly suppressed the fruits of the unlaw- ful arrest of appellee.

Order affirmed.

---

**3.** *People v. Sampson,* 73 N.Y.2d 908, 539 N.Y.S.2d 288, 536 N.E.2d 617 (1989) and *People v. Junco,* 35 N.Y.2d 419, 363 N.Y.S.2d 82, 321 N.E.2d 875 (1974).

**4.** Our decision here is limited to the circum- stances presented in this case. Namely the ex- traterritorial arrest of a Pennsylvania resident by a Pennsylvania police officer for offenses occur- ring in Pennsylvania. A change in any of these circumstances could quite possibly affect the analysis contained herein as interests of comity between states and state sovereignty may compel different conclusions.

**5.** It is also important to our decision that we are extending to appellee greater rights than he would enjoy under New York law. We find this situation analogous to conflicts between constitu- tional rights under the Federal and State Consti- tutions. Pennsylvania is free to grant its citizens greater rights under its constitution than the Federal constitution provides, but not less. *Com- monwealth v. Labron,* 547 Pa. 344, 690 A.2d 228 (1997). In the present case we are merely ex- tending to appellee the same rights he would enjoy if the violation had occurred within Penn- sylvania's borders.