752 A.2d 393

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Stephen S. SADVARI, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 31, 2000.

Decided May 18, 2000.

Dennis Woody, Media, for Stephen S. Sadvari.

Patrick Meehan, Dist. Atty., Louis G. Stesis, A. Sheldon Kovach, District Attorney's Office, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

SAYLOR, Justice.

In this case we consider the lawfulness of an extraterritorial arrest of a Delaware citizen for an offense occurring in Pennsylvania.

On October 31, 1996, at approximately 2:45 a.m., two Pennsylvania State Police Troopers were traveling south on State Route 202 in a marked police cruiser. As the troopers neared the Pennsylvania–Delaware border, they observed a vehicle operated by Appellant, Stephen Sadvari ("Sadvari"), approach from behind at a high rate of speed, abruptly decelerate as it reached the rear of the police cruiser, then proceed past. The troopers began following, clocking Sadvari at approximately 60 miles per hour in a 45 mile per hour speed zone. Shortly after crossing the Pennsylvania–Delaware state line, the troopers activated their emergency lights, stopping Sadvari approximately four-tenths of a mile inside the state of Delaware. When one of the troopers requested Sadvari's license and

registration, he smelled a strong odor of alcohol and noticed Sadvari's slurred speech and bloodshot eyes. Upon questioning, Sadvari admitted drinking after work, at which point he was asked to step out of his vehicle and perform two field sobriety tests. Sadvari failed the tests and was arrested and transported to Riddle Memorial Hospital in Delaware County, Pennsylvania, where blood samples were drawn for chemical testing. A subsequent analysis of the samples revealed a blood alcohol content of .16%. Sadvari was then taken to the State Police barracks near Media, Pennsylvania, and was ultimately released. On November 12, 1996, a criminal complaint was filed, charging Sadvari with driving under the influence of alcohol and exceeding the maximum speed limit. A preliminary hearing was held on January 9, 1997, following which the driving under the influence offense was held for court.[1]

Prior to trial, Sadvari moved, *inter alia*, to suppress the evidence of the driving under the influence offense, particularly his statements at the time of the stop, the observations of the troopers, and the blood alcohol test results. At the hearing on his suppression motion, Sadvari argued that such evidence was the product of an unlawful arrest because the arrest was not conducted in accordance with Section 1933 of Delaware's fresh pursuit statute, Del.Code, tit. 11, §§ 1031–1933,[2] which provides as follows:

**Hearing before justice of the peace; waiver of extradition**

If an arrest is made in this State by an officer of another state in accordance with § 1932 of this title, the officer shall without unnecessary delay take the person arrested before a justice of the peace of the county in which the arrest was made, who shall conduct a hearing for the purpose of determining the lawfulness of the arrest. If the justice of

1. The speeding offense was dismissed.

2. Sadvari's motion to suppress did not specifically indicate this ground; nevertheless, as he averred that the stop was unlawful and as the suppression court addressed this argument on the merits, we will consider the issue as adequately preserved.

the peace determines that the arrest was lawful the justice of the peace shall commit the person arrested to await for a reasonable time the issuance of an extradition warrant by the Governor of this State, or admit the person for bail for such purpose. If the justice of the peace determines that the arrest was unlawful the justice of the peace shall discharge the person arrested.

If the person so arrested waives extradition in the manner provided by law, upon the filing of the waiver at the central office of headquarters of any local, county or state police, or at the local office of the Attorney General, the office having the arrested person in charge may forthwith take the person from this State to the state where the arrested person is wanted for having committed the felony.

Del.Code, tit. 11, § 1933. Since the Pennsylvania State Troopers never brought him before a Delaware justice of the peace as directed by the statute, Sadvari contended that the arrest was illegal and warranted suppression, although conceding that the troopers had otherwise acted within the authority provided by Section 1932 of the Delaware statute:

**Arrest by out-of-state police.**

(a) Any member of a duly organized state, county or municipal peace unit of another state of the United States who enters this State in fresh pursuit, and continues within this State in such fresh pursuit, of the person in order to arrest the person on the ground that the person is believed to have committed a felony, a misdemeanor or a violation of the motor vehicle code in such other state, shall have the same authority to arrest and hold such person in custody, as any member of any duly organized state, county or municipal peace unit of this State, to arrest and hold in custody a person on the ground that the person is believed to have committed a felony, a misdemeanor or a violation of the Motor Vehicle Code in this State.

(b) This section shall not be construed so as to make unlawful any arrest in this State which would otherwise be lawful.

Del.Code, tit. 11, § 1932.[3]

█ The suppression court found that the troopers had probable cause to stop Sadvari, and that Section 1932 of the Delaware statute granted them authority to enter Delaware while in fresh pursuit and conduct an arrest. While the court agreed with Sadvari that he should have been taken before a Delaware justice of the peace as required by Section 1933 of the Delaware statute, it viewed this requirement as an extradition provision. Thus, the court concluded that suppression of the evidence was not appropriate, since the violation of Delaware law did not affect either the reliability of the evidence seized or Sadvari's constitutional rights. Sadvari proceeded to a jury trial, was found guilty and was sentenced to a term of imprisonment of thirty days to twenty-three months. On appeal, the Superior Court affirmed, reasoning that Section 1933 is an extradition statute to which the exclusionary rule does not apply, see *Commonwealth v. Sadvari*, 723 A.2d 1044, 1049 (Pa.Super.1998), and this Court allowed appeal to review such conclusion.[4]

In this appeal, Sadvari argues that in construing Section 1933 of the Delaware statute as an extradition provision, the Superior Court ignored the focus of the enactment upon the initial arrest and the directive that a Delaware justice of the peace determine its lawfulness. As a Delaware tribunal was not provided the opportunity to pass upon the propriety of the troopers' entry and actions in Delaware, Sadvari asserts that the motor vehicle stop was unlawful, thereby tainting all of the evidence that followed.[5] According to Sadvari, the Superior

3. Delaware defines fresh pursuit as not necessarily implying instant pursuit, but involving pursuit without unreasonable delay. *See* 11 Del.Code, tit. 11, § 1931; *accord Commonwealth v. Magwood*, 503 Pa. 169, 177, 469 A.2d 115, 119 (1983) (defining the word "pursuit" as including both classic "hot pursuit" and "fresh" or "continuous pursuit").

4. Our review of a suppression ruling is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from the findings are correct. *See Commonwealth v. Mendenhall*, 552 Pa. 484, 486, 715 A.2d 1117, 1118 (1998).

5. Sadvari does not challenge the authority of the troopers under Section 1932 of the Delaware statute to pursue him into Delaware for a

Court's opinion is in conflict with its prior decision in *Commonwealth v. Shaffer*, 710 A.2d 89 (Pa.Super.1998), *appeal denied*, 1999 WL 117669 (Pa. Mar.9, 1999). The Commonwealth, on the other hand, maintains that Section 1933 is merely an extradition provision and that the failure to comply with it cannot render an initially lawful arrest unlawful. Alternatively, the Commonwealth asserts that even if the arrest is deemed unlawful, only the blood samples and chemical test results constitute fruits of such illegality, and the remedy of suppression should be tailored accordingly.

In *Commonwealth v. Shaffer*, the Superior Court considered the propriety of an extraterritorial arrest of a Pennsylvania citizen that occurred in New York. In that case, a Pennsylvania State Trooper followed a speeding vehicle over the Pennsylvania/New York border, arrested the driver after he failed field sobriety tests and transported him back to Pennsylvania, where he was charged with driving under the influence. The defendant sought suppression based upon a violation of the New York Uniform Act on Close Pursuit, N.Y.Crim. Pro. Law § 140.55, which provides, in relevant part:

> 3. If an arrest is made in this state by an officer of another state in accordance with the provisions of subdivision two, he shall without unnecessary delay take the person arrested before a local criminal court which shall conduct a hearing for the sole purpose of determining if the arrest was in accordance with the provisions of subdivision two....

N.Y.Crim. Pro. Law § 140.55.[6] The trial court granted the defendant's motion to suppress based upon the Common-

summary offense, namely, speeding. In any event, it appears that the actions of the troopers were consistent with Section 1932, as that provision affords Pennsylvania officers (in the first instance) in-state arrest authority concurrent with that of local police, and the Pennsylvania Vehicle Code confers authority to "arrest without a warrant any person who violates any provision of this title in the presence of the police officer making the arrest." *See* 75 Pa.C.S. § 6304(a).

**6.** Subdivision two of the New York enactment provides:

Any peace officer of another state of the United States, who enters this state in close pursuit and continues in this state in such close pursuit of a person in order to arrest him, shall have the same authority to arrest and hold in custody such person on the ground

wealth's concession of a violation of the New York enactment, since the defendant was not taken before a New York criminal court. The Superior Court determined that a Pennsylvania officer has no inherent authority to effect an arrest in New York; rather, his authority to do so is derived from the New York close pursuit statute and is conditioned by the terms of such enactment upon timely validation by a New York court. Since the trooper did not take the defendant before a local criminal court, the Superior Court deemed the arrest unlawful. *Shaffer*, 710 A.2d at 91. Further, the Superior Court found that, in light of the situs of the arrest in New York and the New York legislature's designation of a procedure for review of such an arrest, the trooper's noncompliance constituted an impingement upon New York's jurisdiction and sovereignty. Given this concern, when it turned to the question of remedy, the *Shaffer* court held that suppression of the evidence was appropriate to ensure accountability of police officers in carrying out their duties. *See Shaffer*, 710 A.2d at 92 (citing *Commonwealth v. Price*, 543 Pa. 403, 672 A.2d 280 (1996)). Additionally, the court rejected the Commonwealth's argument that New York's good faith exception to the exclusionary rule should apply, as the defendant was a Pennsylvania citizen and "it is for Pennsylvania to dictate how its police officers are to carry out their duties and the consequences for violating such dictates." *Id.* at 92.

In the present case, the Superior Court did not disagree with the reasoning of *Shaffer*, but rather, chose to distinguish the decision. The court found that New York's close pursuit statute addresses the out-of-state officer's *authority* to make the arrest, specifically requiring a New York court to determine whether its internal terms establishing the basis for such authority have been violated, whereas the Delaware statute contained no such requirement. *See Sadvari*, 723 A.2d at 1048. The Superior Court also found that Section 1932 of the

that he had committed a crime in another state which is a crime under the laws of the state of New York, as police officers of this state have to arrest and hold in custody a person on the ground that he has committed a crime in this state.

N.Y.Crim. Pro. Law § 140.55.

Delaware statute negated an interpretation that would require a Delaware tribunal to pass upon the arresting officer's compliance with the Delaware statute in the provision's directive that "[t]his section shall not be construed so as to make unlawful any arrest in this State which would otherwise be lawful." Del.Code, tit. 11, § 1932(b). Since it discerned no requirement that a judicial officer determine compliance with the Delaware statute, and based upon references to extradition contained in the title and text of Section 1933, the Superior Court concluded that the provision was solely an extradition statute. Thus, the Superior Court perceived no concern of jurisdiction or sovereignty related to Sadvari's arrest such as had motivated the application of the exclusionary rule in *Shaffer*. Indeed, because it viewed the proceedings under the Delaware statute as summary in nature and not implicative of procedural safeguards of the form required in criminal proceedings, the Superior Court determined that no evidentiary sanction was required. *Sadvari*, 723 A.2d at 1049.

■   Upon examination, it is clear that the panel decisions in *Sadvari* and *Shaffer* are in conflict. While in *Sadvari* the Superior Court distinguished the New York and Delaware statutes on the basis of their respective titles and textual references, we do not view the distinctions drawn as controlling. First, with regard to the title of Section 1933 of the Delaware statute, the designation refers to two subjects— "hearing before justice of the peace" *and* "waiver of extradition"—only the latter of which is specific to extradition; therefore, the title is not necessarily suggestive of an exclusive focus.[7] Significantly, both the New York and Delaware statutes derive from a uniform law, namely, the Uniform Act on the Fresh Pursuit of Criminals Across State Lines. *See* COUNCIL OF STATE GOVERNMENTS, THE HANDBOOK ON INTERSTATE CRIME CONTROL 147–50 (1978). More important, the Superior

7. In any event, although "the title ... of a statute may be considered in the construction thereof," it does not control the plain words of the enactment. 1 Pa.C.S. § 1924; *see also Magwood,* 503 Pa. at 177, 469 A.2d at 119; *Trader v. Jester,* 1 A.2d 609, 613 (Del.Super.Ct.1938).

Court's conclusion that the text of Section 1933 does not require a justice of the peace to determine whether the arresting officer complied with the Delaware statute is in error. The Delaware statute plainly requires the justice of the peace to "determin[e] the lawfulness of the arrest," and, as in *Shaffer*, there simply is no authority for a uniformed Pennsylvania trooper in a marked police cruiser to effectuate an extraterritorial arrest in Delaware other than Section 1932 of the Delaware statute. *See Commonwealth v. Stair*, 548 Pa. 596, 609, 699 A.2d 1250, 1257 (1997) (Zappala, J., opinion in support of reversal) (stating that "in the absence of statutory or constitutional authority, a police officer acting within his official capacity cannot make an arrest outside the territorial limits of the jurisdiction from which his authority is derived"); *State v. Cochran*, 372 A.2d 193, 195 (Del.1977). Accordingly, to comply with the mandate of Section 1933 to evaluate the lawfulness of an arrest, a Delaware tribunal must assess the arresting officer's compliance with Section 1932. There is no functional difference between this approach and that of New York—the only semantic distinction is that New York's version of the fresh pursuit statute directly references the sole source of the out-of-state officer's authority by way of citation to subdivision two of the New York statute, N.Y.Crim. Pro. Law § 1405(2) (setting forth New York's equivalent to Section 1932 of the Delaware statute); whereas, Delaware accomplishes the same effect by referring more generally to review of the lawfulness of the arrest.[8]

**8.** Additionally, contrary to the Superior Court's conclusion, Section 1932(b) of the Delaware statute, which provides that Section 1932 does not operate to make unlawful any arrest in Delaware which would otherwise be lawful, cannot insulate Sadvari's arrest from review for compliance with Delaware fresh pursuit jurisprudence. This is so, because an extraterritorial arrest of the kind at issue is not one "which would otherwise be lawful" but for the Delaware statute, since, again, Pennsylvania law enforcement officers lack authority independent of the Delaware statute to effect the arrest in Delaware. Indeed, the New York fresh pursuit statute employs the same language, N.Y.Crim. Pro. Law § 140.55(4), but at the same time quite consistently requires the New York reviewing tribunal to pass upon the question of compliance with the arrest terms of the statute. N.Y.Crim. Pro. Law § 140.55(4).

As noted, the troopers in this case did not comply with the condition imposed upon their authority under the Delaware statute, which required them to bring Sadvari before a Delaware justice of the peace. Accordingly, under the rationale of *Shaffer*, which we endorse, the arrest was illegal.

It remains to determine a remedy. As the Superior Court correctly noted, not every violation of a statute or rule requires suppression. On the one hand, it could be argued that the Delaware statute merely duplicates the framework provided by Pennsylvania law and our procedural rules for safeguarding defendants' constitutional rights; therefore, in individual cases a remedy as exacting as suppression should not be deemed necessary. We find, however, that the Delaware statute, with its directive that an out-of-state officer present the arrestee to a Delaware judicial tribunal for review of the lawfulness of an arrest conducted in Delaware, functions as more than merely an extradition statute, and that a contrary interpretation would render empty the mandate of the Delaware law. The exclusionary rule has previously been employed to ensure the orderly administration of justice where a police officer acts without authority, even in cases in which constitutional rights are not at the forefront. *See generally State v. Rizzo*, 634 A.2d 392, 402 (Del.Super.Ct.1993) (characterizing the exclusionary rule as a rule of evidence, adopted as an instrument to implement justice, and not standing upon constitutional grounds). *Cf. Price*, 543 Pa. at 412–13, 672 A.2d at 284–85 (concluding that an FBI agent lacked authority to arrest a defendant for driving under the influence, and that the exclusionary rule barred all evidence obtained as a result of the stop). In this instance, application of the exclusionary rule will serve primarily as a demonstration of comity to vindicate Delaware's sovereignty in light of Pennsylvania's incursion upon this important state interest.[9] Suppres-

9. As previously noted, the *Shaffer* panel suggested that its decision turned upon the status of the arrestee as a Pennsylvania citizen. Where, however, an extraterritorial arrest is effected, the law of the state where the arrest occurred determines its validity, *see generally United States v. Di Re*, 332 U.S. 581, 589, 68 S.Ct. 222, 226, 92 L.Ed. 210 (1948); *Stair*, 548 Pa. at 609, 699 A.2d at 1257 (Zappala, J.,

sion is also appropriate to encourage future compliance with Delaware's procedures and, in a more general sense, to safeguard the individual right to be free from unlawful seizures.[10]

██ Finally, as Section 1933 of the Delaware statute is limited to extraterritorial arrests, the application of the exclusionary rule is generally dependent upon the point when Sadvari was subjected to an arrest or its functional equivalent, and we deem this manner of application sufficient to protect Delaware's interests in this situation. An arrest is "accomplished by any act that indicates an intention to take a person into custody and subjects him to the actual control and will of the person making the arrest." *See Commonwealth v. Bosurgi*, 411 Pa. 56, 68, 190 A.2d 304, 311, *cert. denied*, 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963); Del.Code, tit. 11, § 1901(1); *Rizzo*, 634 A.2d at 395. Whether an arrest has occurred is based upon the totality of the circumstances and viewed in the light of the reasonable impression conveyed to the person subjected to the seizure. *See Commonwealth v. Carter*, 537 Pa. 233, 246, 643 A.2d 61, 67 (1994), *cert. denied*,

opinion in support of reversal), and we have found no Delaware authority which would draw any distinction on the basis of an arrestee's citizenship in terms of applicability of the provisions of the Delaware statute. In any event, if anything, the sovereignty concern upon which our decision and *Shaffer* rest is heightened where, as here, the arrestee is a citizen of the state in which the extraterritorial arrest occurs.

10. Other jurisdictions have adopted a similar approach, requiring suppression in analogous circumstances. *See, e.g., United States v. Holmes*, 380 A.2d 598, 600, 602 (D.C.1977)(affirming the suppression of evidence where the defendant was not taken before a judge as required by the District of Columbia's Uniform Act on Fresh Pursuit); *People v. Jacobs*, 67 Ill.App.3d 447, 24 Ill.Dec. 370, 385 N.E.2d 137, 140 (1979)(suppressing evidence where police failed to take the defendant before an Iowa magistrate as required by the Uniform Fresh Pursuit Law of Iowa); *Commonwealth v. Savage*, 430 Mass. 341, 719 N.E.2d 473, 478 (1999)(excluding evidence of the driving under the influence violation where the officer acted without statutory or common law authority in making an extraterritorial stop). *But see State v. Bonds*, 98 Wash.2d 1, 653 P.2d 1024, 1031 (1982) (*en banc* ) (declining to suppress evidence for an arrest of a juvenile in violation of Oregon law in light of available alternative remedies in the form of civil liability, but stating "that we will not hesitate in the future to use our supervisory power to exclude the fruits of unauthorized excursions"), *cert. denied*, 464 U.S. 831, 104 S.Ct. 111, 78 L.Ed.2d 112 (1983).

514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995); *Rizzo,* 634 A.2d at 395. Here, the police initially conducted a traffic stop. Although such a stop constitutes a seizure within the meaning of the Fourth Amendment, *see Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979), it involves an investigative detention as opposed to an arrest. *See Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984). Moreover, as the suppression court found, Sadvari was placed under arrest after failing the field sobriety tests.[11] Consequently, the troopers' observations relating to Sadvari's driving, appearance at the time of the stop, and performance of the field sobriety tests were not tainted by the failure to comply with the Delaware statute. However, the evidence obtained following Sadvari's arrest should have been suppressed.[12]

Accordingly, the order of the Superior Court is reversed and the case is remanded for proceedings consistent with this opinion.

---

**11.** Although a request to perform field sobriety tests may arguably implicate a greater intrusion than an investigative detention, there is no compulsion to comply with the request. *See generally Commonwealth v. Hayes,* 544 Pa. 46, 57, 674 A.2d 677, 683 (1996). Moreover, Sadvari does not argue that the circumstances attending the request to perform the field sobriety tests constituted the functional equivalent of an arrest.

**12.** We do not suggest that an arresting officer is precluded from gathering evanescent evidence of the kind at issue in this case. Section 1933 requires that an arrestee be taken before a Delaware justice of the peace "without unnecessary delay," thus apparently anticipating the necessity for, *inter alia,* chemical testing.