J-A29017-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RODNEY ALLEN WILLIAMS, | |
| Appellant | No. 1902 WDA 2013 |

Appeal from the Judgment of Sentence entered August 2, 2013,
in the Court of Common Pleas of Allegheny  County,
Criminal Division, at No(s): CP-07-CR-0002700-2011
and CP-07-CR-0001025-2012

BEFORE:  BOWES, ALLEN, and STRASSBURGER*, JJ.

MEMORANDUM BY ALLEN, J.:                              **FILED NOVEMBER 07, 2014**

Rodney Allen Williams ("Appellant") appeals from the judgment of sentence imposed after a jury found him guilty at Docket No. 2700-2011 of possession with intent to deliver cocaine, and at Docket No. 1025-2012 of three counts of possession with intent to deliver cocaine, and one count each of dealing in proceeds of unlawful activity, corrupt organizations, criminal conspiracy to deliver, criminal use of a communication facility, and criminal attempt.  We affirm.

The pertinent facts may be summarized as follows:  Between July and November of 2011, agents from the Pennsylvania Office of Attorney General's Bureau of Narcotics Investigation and Drug Control ("NIDC") conducted a series of controlled purchases of cocaine and intercepted

_____

* Retired Senior Judge assigned to the Superior Court.

numerous telephone calls from the telephone of an individual named Jermaine Samuel, in which Mr. Samuel arranged the purchase, delivery, and sale of cocaine between Altoona, Pennsylvania and Baltimore, Maryland. Affidavit of Probable Cause, 11/4/11; N.T., 5/6/13, at 178-205; N.T., 5/7/13, at 32-161; N.T., 5/8/13, at 1-110. In collaboration with the Pennsylvania NIDC agents, members of the Baltimore City Police Department traced the telephone number of one of the recipients of Jermaine Samuel's telephone calls to the area of Thornfield Avenue in Maryland, where they conducted physical and electronic surveillance. N.T., 5/9/13, at 84-87. By monitoring and tracking telephone records and telephone signals as well as the suspects' physical movements, the agents developed a belief that Appellant, who resided on Thornfield Avenue, was involved in drug trafficking with Jermaine Samuel. N.T., 5/9/13, at 84-87. Maryland police officers then subjected Appellant to a traffic stop in an effort to verify his identity by viewing his driver's license. N.T., 5/9/13, at 84-87. Based on the foregoing electronic phone tracking and physical surveillance, Appellant was arrested and charged with the aforementioned crimes. Officers additionally identified several other people involved in drug trafficking with Jermaine Samuel, including Natasha Miller, Shonda Hicks, Damion Floyd, Brian Stroh, Lieesha Samuel Green, Glenn Piner, Stephen Piner and Kenneth Piner. Testimony at trial indicated that Jermaine Samuel distributed cocaine from the Corner Bar in Altoona, Pennsylvania, that Appellant supplied him with cocaine from Baltimore, and Damion Floyd

facilitated the purchases of cocaine and its transportation to Altoona, while Shonda Hicks and Natasha Miller were involved in driving the cocaine and money between Baltimore and Altoona. N.T., 5/9/13, at 157-159. Steven and Kenneth Piner participated in distributing the cocaine obtained from Jermaine Samuel. N.T., 5/6/13, at 112-113.

The jury trial commenced on May 6, 2013, and on May 10, 2013, the jury rendered its verdicts. The trial court convened a sentencing hearing on August 2, 2013, when it sentenced Appellant to an aggregate term of imprisonment of 22 to 44 years. Appellant filed timely post-sentence motions, which the trial court denied on November 14, 2013. This appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

I.   WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT RODNEY WILLIAMS' SEVERAL MOTIONS FOR MISTRIAL AFTER THE COMMONWEALTH INTENTIONALLY ELICITED INADMISSIBLE EVIDENCE REGARDING APPELLANT'S PRIOR CRIMINAL HISTORY THROUGH AGENT ALBERT ADAMS' TESTIMONY.

II.  WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A MISTRIAL BASED ON THE COMMONWEALTH'S IMPROPER STATEMENT DURING CLOSING ARGUMENT THAT THE JURY SHOULD "SEND A MESSAGE" BY RETURNING A GUILTY VERDICT.

III. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS ALL THE EVIDENCE OBTAINED FROM THE TRAFFIC STOP OF APPELLANT THAT WAS CONDUCTED AS PART OF A MANUFACTURED RUSE

- 3 -

> AND UNDER FALSE PRETENSES FOR THE SOLE PURPOSE OF ASCERTAINING HIS IDENTIFICATION IN ORDER TO UNDERTAKE THE INVESTIGATION THAT ULTIMATELY LED TO THE CRIMINAL CHARGES FILED AGAINST APPELLANT.

Appellant's Brief at 4.

In his first issue, Appellant argues that the trial court erred in denying his motion for a mistrial after the Commonwealth intentionally elicited inadmissible testimony regarding Appellant's prior criminal history. Appellant's Brief at 15-16. Our Supreme Court recently explained:

> A trial court is required to grant a mistrial only where the alleged prejudicial event may reasonably be said to have deprived the defendant of a fair and impartial trial. It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion.
>
> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will ... discretion is abused. A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice.

**Commonwealth v. Fortenbaugh**, 69 A.3d 191, 193 (Pa. 2013) (internal quotation marks and citations omitted).

Appellant takes issue with the testimony elicited by the Commonwealth from NIDC Agent Albert Adams, when questioned about Appellant's interaction with Damion Floyd, who was incarcerated at SCI Camp Hill. Specifically, Appellant challenges the following testimony:

| | |
|---|---|
| Deputy Attorney General: | With regards to these various individuals, as far as Shawn and Rocco, [Appellant] and Jermaine Samuel, would they, quote, have been allowed to visit Mr. Floyd in prison? |
| Agent Adams: | They wouldn't have been able to. If you're a prisoner ... Some of the restrictions in place as a state prisoner, ***if you have criminal histories or prior felony arrests, etc., they restrict you from visiting people in there.*** |

N.T., 5/6/13, at 188 (emphasis added).

Appellant's counsel objected and requested a mistrial, asserting that a curative instruction would serve only to highlight the statement, that the prejudice was incurable, and that a mistrial was the only remedy. N.T., 5/7/13, at 2-20. The trial court denied Appellant's motion for a mistrial, explaining that it "believe[d] the jury can follow a curative instruction" and that "the more specific the curative instruction the more likely that the jury will understand the instruction ... and follow it correctly." *Id*. at 27. The trial court then issued the following curative instruction:

Ladies and gentlemen, let me be clear to you. Yesterday, [the Commonwealth] asked this question: with regards to these various individuals as far as Shawn and Rocco, [Appellant] and Jermaine Samuel, would they, quote, have been allowed to visit Mr. Floyd in prison. The response by Agent Adams was: They wouldn't have been able to. If you are a prisoner, some of the restrictions in place as a state prisoner, you have a criminal history or prior felony arrest, etc. they restrict you from visiting people in there. Ladies and gentlemen, both the question and the answer were improper and yesterday I should not have allowed them to be entered into the record. You may not

consider either the question or the response at all from this point forward.

N.T, 5/7/13, at 31-32.

Appellant argues that Agent Adams' statement directly and unmistakably informed the jury that Appellant had a criminal history, and was therefore highly prejudicial and warranted a mistrial. Appellant's Brief at 17-20. Appellant maintains that the prejudice could not be cured by the trial court's curative instruction, and asserts that Appellant thus was deprived of a fair trial. *Id*. In rebutting this assertion, the trial court offered the following rationale:

> Agent Adams' testimony was ... a passing reference to Appellant's criminal activity. A mere passing reference to [Appellant] having "some dealings" with the police department does not necessarily indicate a prior criminal record. ***Commonwealth v. Banks***, 521 A.2d 1 (1987). As such, Agent Adams' statement was not so prejudicial that a curative instruction could not remove the taint of such reference.

> [The trial court] chose the route of a curative instruction to cure any lingering prejudice. A mistrial is not automatically required if the inference of prior criminality was innocuous and an effective curative instruction was immediately given. ***Commonwealth v. Bruner***, 564 A.2d 1277 (Pa. Super. 1989). All the circumstances must be considered in determining whether an instruction can cure the exposure of improper evidence to the jury. ***Commonwealth v. Richardson***, 437 A.2d 1162, 165 (1981). This includes examining whether the Commonwealth intentionally elicited the remark and exploited the reference, whether a responsive answer was given, and whether significant curative instructions were given. ***Commonwealth v. Gaerttne***r, 484 A.2d 92 (Pa. Super. 1984). The curative instructions must be clear and specific and instruct the jury to disregard the improper

evidence. ***Commonwealth v. Hudson***, 955 A.2d 1031, 1034 (Pa. Super. 2008).

... The Commonwealth did not exploit the reference to Appellant's prior criminal history throughout the remainder of trial.

The [trial court] determined that a curative instruction was appropriate [and] on the morning of the second day of trial, the [trial court] instructed the jury – not once but twice – not to consider either the question or answer regarding Appellant's visiting privileges.

\*\*\*

The [trial court] emphasizes that although the Commonwealth elicited the testimony on direct examination at the end of the first day of the trial, Appellant's counsel reiterated this information in his closing argument. You've got the Attorney General who knowingly asked the question that you were told to disregard in violation of just about everything we stand for. [N.T., 5/10/13 at 32-33]. In response, the [trial court] issued an additional curative instruction during closing jury instructions:

> Ladies and gentlemen, I was not going to bring this back up, but because [Appellant's counsel] included it in his closing, I am repeating what I told you Tuesday morning ... You may not consider that question. You may not consider the answer. It was inappropriate evidence to be put before you. You cannot do that. You just simply can't. If you would do that, it would be improper and you would not be doing your responsibilities correctly. Ladies and gentlemen, if there is any juror that cannot follow that instruction, I need you to tell me right now. Is there anybody who cannot follow it? Again, you cannot consider the question or answer of that at all.

[N.T., 5/10/13, at 81-82.]

Appellant should not benefit from the acts of his counsel in reviving Agent Adams' prejudicial remark. The [trial court] issued several clear and specific curative instructions to disregard both [the Commonwealth's] question and Agent Albert Adams' prejudicial answer; these multiple curative instructions were capable of removing any taint caused by the passing reference to Appellant's prior criminal history. Furthermore, the law presumes that the jury will follow the [trial court's] curative instructions; consequently, a mistrial was not warranted. *Commonwealth v. Spotz*, 896 A.2d 1191, 1224 (Pa. 2006).

Trial Court Opinion, 11/14/13, at 5-11.

We have explained that a mistrial may be warranted when a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity. *Commonwealth v. Parker*, 957 A.2d 311, 319 (Pa. Super. 2008) (citations and internal quotations omitted). "When the statement at issue relates to a reference to past criminal behavior, [t]he nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required." *Id*. "A singular, passing reference to prior criminal activity is usually not sufficient to show that the trial court abused its discretion in denying the defendant's motion for a mistrial. When the trial court provides cautionary instructions to the jury in the event the defense raises a motion for mistrial, [t]he law presumes that the jury will follow the instructions of the court." *Id*. Thus, "[i]n a criminal case, the possible prejudicial effect of a witness's reference to prior criminal conduct of the defendant may, under certain circumstances,

be removed by an immediate cautionary instruction to the jury."
***Commonwealth v. Richardson***, 437 A.2d 1162, 1164 (Pa. 1981).

Here, Appellant argues that the challenged statement by Agent Adams was deliberately elicited and unmistakably informed the jury about Appellant's criminal history. Appellant challenges the Commonwealth's question to Agent Adams as to "[whether] Shawn and Rocco, [Appellant] and Jermaine Samuel would ... have been allowed to visit Mr. Floyd in prison?" to which Agent Adams responded: "They wouldn't be able to. ... [I]f you have criminal histories or prior felony arrests ... they restrict you from visiting people in there." N.T., 5/6/13, at 188. Although the reference to Appellant's prior criminal history was made in response to a question by the Commonwealth, the record does not indicate that the reference was deliberately elicited to establish Appellant's prior record. Additionally, the agent's comment that in general individuals with criminal histories cannot visit prisons did not implicate Appellant alone as having a criminal record, and the Commonwealth did not thereafter attempt to exploit the single reference to highlight Appellant's criminal history.[1]

More importantly, the curative instructions issued by the trial court – both at the time the challenged statements were made and again during

---

[1]As the trial court observed, it is significant that Appellant's counsel, during closing arguments, emphasized to the jury that the Commonwealth "knowingly asked [a] question that you were told to disregard in violation of just about everything we stand for", and that in so doing, Appellant sought to capitalize on the statement he now challenges. N.T., 5/10/13, at 32-33.

closing arguments – were direct, unequivocal, and strong, informing the jury that they were not to consider Agent Adams' statement, and were sufficient to expunge any taint and assure Appellant a fair trial. Under the circumstances of this case, and for the above reasons, we find no abuse of discretion in the trial court's determination that Agent Adams' testimony did not warrant a mistrial.

In his second issue, Appellant argues that the trial court erred in denying his motion for a mistrial based on the Commonwealth's statement during closing argument that the jury should "send a message" by returning a guilty verdict. Appellant's Brief at 26-29. In considering such a claim of prosecutorial misconduct, once again, our standard of review is limited to whether the trial court abused its discretion. "It is within the discretion of the trial court to determine whether a defendant has been prejudiced by misconduct or impropriety to the extent that a mistrial is warranted." *Commonwealth v. Baez*, 720 A.2d 711, 729 (1998). "Not every unwise remark on a prosecutor's part constitutes reversible error. Indeed, the test is a relatively stringent one. Generally speaking, a prosecutor's comments do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward appellant so that they could not [weigh] the evidence objectively and render a true verdict." *Commonwealth v. Harris*, 884 A.2d 920, 927 (Pa. Super. 2005). "Prosecutorial misconduct ... will not be found where the comments were based on evidence or proper inferences

therefrom or were only oratorical flair." *Id*. "[O]ur attention is focused on whether the defendant was deprived of a fair trial, not a perfect one. ... A prosecutor's statements to a jury do not occur in a vacuum, and we must view them in context." *Commonwealth v. Lewis*, 39 A.3d 341, 352 (Pa. Super. 2012) (citations and internal quotations omitted).

Appellant challenges the following statement by the Commonwealth:

By your verdict today you can tell [Appellant] that no matter if you're in Baltimore, sitting in your house providing drugs or Shonda Hicks transporting the drugs or Jermaine Samuel selling the drugs out of the Corner Bar or Steve and Kenny Piner, we will find you. We will investigate --

N.T., 5/10/13, at 75.

Appellant's counsel objected to this comment and moved for a mistrial, or in the alterative, a curative instruction. *Id*. at 76. The trial court then permitted the Commonwealth to conclude its closing statement, and the Commonwealth clarified its statement as follows:

| Assistant District Attorney: | Ladies and gentlemen of the jury, we're only talking about [Appellant] here and he's the only one before you today. I ask you to tell him that his business is closed and you tell him that by finding him guilty of each and every charge. |
| --- | --- |

N.T., 5/10/13, at 76-77.

The trial court then issued the following curative instruction:

Ladies and gentlemen, before I give you a break, I need to tell you something. What [the Commonwealth] said there about sending a message is not appropriate. This is not about sending the message on other issues. ... That cannot be part of any

- 11 -

consideration of what you're doing. We're here for this trial, for the trial of [Appellant] only. Your deliberations have to be just about the facts that have been presented to you over the last four or five days. You cannot have any consideration beyond what you have heard here. So for [the Commonwealth] to tell you that you need to send a message to anyone other than [Appellant] is inappropriate and wrong and you should not consider it.

*Id*. at 77.

Our courts have explained that while a prosecutor's invitation to the jury to "send a message" to others through its verdict is not per se prejudicial in non-capital cases, such statements are nevertheless "inherently dangerous" in a criminal case because "the jury's role is to render a verdict based on the evidence, not based on the effect of that verdict." ***Commonwealth v. Patton***, 985 A.2d 1283, 1288 (Pa. 2009). "[The Pennsylvania Supreme Court] has stridently condemned prosecutorial statements urging a criminal jury to 'send a message' to the community or the criminal justice system. ... [and] [e]ven when [it has] found such remarks to be harmless, [it has] admonished all parties in criminal matters before any court in the Commonwealth to refrain from such exhortation in the future." ***Id.***, at 1287.

Here, the prosecutor invited the jury to "tell [Appellant] that no matter if you're in Baltimore sitting in your house providing drugs or Shonda Hicks transporting the drugs or Jermaine Samuel selling the drugs out of the Corner Bar or Steve and Kenny Piner, we will find you ... [w]e will investigate." N.T., 5/10/13, at 76-77. Immediately thereafter, though, the

Commonwealth modified its statement, clarifying to the jury that "we're only talking about [Appellant] here and he's the only one before you today." *Id*. The trial court then promptly issued a curative instruction, directing the jury to disregard the Commonwealth's invitation to send a message of any sort. N.T., 5/10/13, at 76-77. As the trial court explained, "[the] curative instruction was clear and specific in ordering the jury to disregard [the Commonwealth's] entreaty to send a message and [instead] consider only the evidence that had been presented to them." Trial Court Opinion, 11/14/13, at 13. We agree with the trial court that again, under the circumstances of this case, the curative instruction, which Appellant himself requested as an alternative to a mistrial and to which he did not object, was sufficient to mitigate any prejudice to Appellant resulting from the Commonwealth's closing statement.

Furthermore, the challenged statement did not invite the jury to send a message to the public at large, but rather to Appellant and those involved in Appellant's crime syndicate. In **Commonwealth v. Patton**, 985 A.2d at 1289, our Supreme Court reasoned that "[p]rosecutorial remarks encouraging a jury to 'send a message' to the defendant or a witness, rather than the community or criminal justice system at large, do not invite consideration of extraneous matters and are not misconduct." Here, the prosecutor's remark asking the jury to "tell Appellant" that his crimes and those of his associates would be investigated, did not invite the jury to send a message to the wider community or to the judicial system, and did not

incite such a degree of prejudice against Appellant as to deny him a fair trial. ***See also Commonwealth v. Hall***, 701 A.2d 190 (Pa. 1997) (Where prosecutor, during closing arguments asked the jury "to send a message, [that if] you come out here [to Coatesville] from Philadelphia... and shoot someone like the defendant did ... you are guilty of first degree murder", such prosecutorial remarks provided a short synopsis of the crime which originated in Philadelphia and ended with a shooting in Coatesville, and the prosecutor's exhortations were an accurate summary of the facts and were proper since they neither caused the jury to form a fixed bias or hostility towards appellant, nor did they ask the jury to send a message to the judicial system or the residents of Philadelphia who commit crimes in a surrounding county).

In his third and final issue, Appellant asserts that the trial court erred in denying his motion to suppress evidence obtained from the traffic stop of Appellant in Maryland. Appellant's Brief at 30-32. Appellant argues that the traffic stop was conducted as part of a manufactured "ruse" and under false pretense and was therefore unconstitutional. *Id*. Appellant contends that Detective Vigue of the Baltimore City Police testified that, in an effort to verify Appellant's identity after determining through surveillance and communication with the NIDC agents that Appellant was involved in drug trafficking, Maryland police officers used the pretext of there being unsecured debris on the bed of Appellant's truck as a "ruse" to conduct a traffic stop of Appellant's vehicle and obtain his driver's license to verify his

name. N.T., 5/9/13, at 107-113. Appellant claims that because the officers employed a "ruse" to stop him and obtain his identity, the traffic stop was illegal. *Id*. This claim is meritless.

First, it is unclear from our review of Appellant's brief, precisely what evidence Appellant is seeking to suppress as a result of the allegedly illegal traffic stop. "The remedy for an illegal arrest in Pennsylvania is suppression of the fruits of the illegal arrest." **Commonwealth v. Shaffer**, 710 A.2d 89 (Pa. Super. 1998). In his brief, however, while Appellant asserts that the motion to suppress the illegal stop should have been granted, Appellant fails to articulate what evidence, other than his name, was obtained as a result of the search, and what precisely he seeks to suppress. *See* Appellant's Brief at 30-32; N.T., 5/9/13, at 104-113.

Moreover, our review of the record contradicts Appellant's assertion that the traffic stop in Maryland was "a ruse." Rather, testimony elicited by the Commonwealth over five days of trial (which included voluminous telephone surveillance records and testimony of numerous law enforcement officers involved in the investigation) indicates that the traffic stop of Appellant was the result of the joint efforts of the officers from the Pennsylvania Office of Attorney General's Bureau of Narcotics Investigation and Drug Control, and the Baltimore City Police Department who, prior to the traffic stop, together conducted extensive electronic and geographical surveillance of Appellant's telephone calls and Appellant's physical location, leading them to believe that Appellant was involved in drug trafficking.

Thus, to the extent that Appellant argues that the officers lacked reasonable suspicion to stop his vehicle, and that the stop was based on a "ruse" that Appellant had an unsecured load in his truck, this claim is meritless.

Finally, our review of the notes of testimony reveals that the law enforcement officers did in fact observe debris fall from Appellant's vehicle prior to the traffic stop. *See* N.T., 5/9/13, at 108. Thus, Appellant's claim that the officers fabricated the falling debris is belied by the record and meritless.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/7/2014