J-S20020-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MERI JANE WOODS, | |
| Appellant | No. 990 WDA 2015 |

Appeal from the Judgment of Sentence of December 15, 2014
In the Court of Common Pleas of Indiana County
Criminal Division at No(s): CP-32-CR-0000078-2014

BEFORE:  PANELLA, OLSON and PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 11, 2016**

Appellant, Meri Jane Woods, appeals from the judgment of sentence entered on December 15, 2014, as made final by the denial of Appellant's post-sentence motion on May 19, 2015.  We affirm.

The trial court ably summarized the evidence presented during the suppression hearing:

> On August 14, 2013, [Appellant voluntarily] went to the Pennsylvania State Police, Indiana [Barracks], to complain of her husband's alleged involvement in child pornography. . . . [Appellant] brought a home computer [with her that day, and she claimed that the computer] contained evidence [that] support[ed] her allegations. . . .
>
> [Appellant] met with Corporal John Roche, the Coordinator of the Southwest Computer Crime Task Force, and filled out a six-page written statement.  At this meeting, Corporal Roche requested [Appellant's] permission to do a preview examination of the computer and [Appellant] agreed.  Once the preview was conducted, images were found on the computer depicting possible child pornography, and

*Retired Senior Judge assigned to the Superior Court.

[Appellant] was agreeable when Corporal Roche indicated he would need to keep [the computer] as a result [of his findings. The interview ended and Appellant left the barracks.]

[Both Appellant and Corporal Roche characterized the police station interview as "friendly." **See** Appellant's Motion to Suppress, 7/10/14, at ¶¶ 15-16; N.T. Suppression Hearing, 8/7/14, at 10. Moreover, Corporal Roche testified: that Appellant "was free to leave at any time" during the interview; that he never read Appellant **Miranda**[1] warnings; that, although Appellant's story "seemed unusual," Corporal Roche "had no reason to disbelieve the main portion of [Appellant's] child pornography accusations" against her husband; and that, during the interview, he "had no belief that criminal activity by [Appellant] had occurred." N.T. Suppression Hearing, 8/7/14, at 10-11 and 24]. . . .

Following a [later,] full [forensic] review [of the computer,] Corporal Roche noted that [the] times when the images were created or accessed were inconsistent with [the] time periods that [Appellant's] husband would have had access to the computer because they occurred after he had moved from the residence. . . .

Trial Court Opinion, 8/12/14, at 1-2.

On December 19, 2013, the Commonwealth charged Appellant with sexual abuse of children and unsworn falsification to authorities.[2] With respect to the sexual abuse of children charge, the Commonwealth's later-filed Information declared:

**COUNT 1:** **Child Pornography – (F3)**

_____

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[2] 18 Pa.C.S.A. § 6312(d)(1) (effective from December 24, 2012 to December 31, 2013) and 4904(a)(1), respectively.

Offense Date: 08/14/13 **18 § 6312 §§ D1**

Knowingly possessed or controlled a book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction, or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act, to wit, the defendant did possess via a computer system/storage medium, files that depicted child pornography, an example of one of these is a file [name], "F7pzSGKQdk[1].jpg", which is a picture of an approximately 9-11 year old female, providing oral copulation to an adult male penis. The image was written to the internal hard disk drive on the defendant's computer on 8/11/13.

. . .

Citation of Statute and Section 1[:] 18 § 6312 §§ D1 (F3)
. . .

Commonwealth's Information, 2/18/14, at 1.

Of note, the above description of 18 Pa.C.S.A. § 6312(d)(1) constitutes only a partial quotation of the statute. At the time Appellant committed the charged crime, 18 Pa.C.S.A. § 6312(d)(1) read in full:

§ 6312. Sexual abuse of children

. . .

**(d) Child pornography.--**

(1) Any person who intentionally views or knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 engaging in a prohibited sexual act or in the simulation of such act commits an offense.

- 3 -

18 Pa.C.S.A. § 6312(d)(1) (effective from December 24, 2012 to December 31, 2013).[3], [4]

Appellant, however, did not contest the sufficiency of the Information.

Prior to trial, Appellant filed a motion to suppress the verbal and written statements she made during the August 14, 2013 police station interview. Within her suppression motion, Appellant admitted that she "voluntarily and of her own free will" went to the police station on August 14, 2013 and that the interview between herself and Corporal Roche on August 14, 2013 was "friendly." Appellant's Motion to Suppress, 7/10/14, at ¶¶ 8 and 15-16. However, Appellant claimed that her "verbal and written statements [] were unlawfully obtained" because, during the interview, Corporal Roche harbored an unarticulated and hidden suspicion that she actually committed the crime. *Id.* at ¶¶ 11-21. The trial court denied Appellant's suppression motion after a hearing. Trial Court Order, 8/12/14, at 1.

_____

[3] At the time Appellant committed the crime, 18 Pa.C.S.A. § 6312(d)(2) declared: "[a] first offense under this subsection is a felony of the third degree, and a second or subsequent offense under this subsection is a felony of the second degree." 18 Pa.C.S.A. § 6312(d)(2) (effective from December 24, 2012 to December 31, 2013).

[4] On January 1, 2014, 18 Pa.C.S.A. § 6312(d)(1) was renumbered; the crime of child pornography is currently located at 18 Pa.C.S.A. § 6312(d). However, the 2014 amendment did not alter the definition of the crime.

Appellant proceeded to a one-day jury trial, where the Commonwealth presented Corporal Roche as both a lay witness and as an expert witness in the field of computer forensics. N.T. Trial, 8/19/14, at 29. Corporal Roche testified that on August 14, 2013, Appellant appeared at the Pennsylvania State Police, Indiana Barracks to report that her husband, Matthew Woods, had committed a crime. *Id.* at 30. Appellant carried her personal computer into the barracks. *Id.* at 31. Corporal Roche testified that, after he and Appellant went back into his office:

> [Appellant said] she had been having difficulties and problems with her husband, Matthew Woods. And she essentially was bringing me the computer because she wanted me to take a look at what was on it because she wanted to tell me that there was child pornography images on the computer and that they were put there by her husband, Matthew Woods.

*Id.*

Since Appellant was "providing [the Corporal] with a lot of information," Corporal Roche asked Appellant to fill out a written statement. Appellant did so. *Id.* As Corporal Roche testified, Appellant wrote the following in her written statement:[5]

> Well, she started to say that her husband worked a lot and that she was starting to feel as if she wasn't close to him anymore. She felt that he was not himself and that he maybe had a girlfriend. So she took some of her phone

_____

[5] Appellant failed to include a copy of the written statement in the certified record to this Court.

records and she started conducting searches on the internet with his particular cell phone number to see what would come up. She said she felt that he was using prostitutes and I believe he was involved in escort services, he was involved in . . . some type of drug organization, he was running it. She stated that the IP address from her computer was seen all over the world and was used for pornography websites and child pornography websites. She said that he was selling sexual toys on eBay. She said that she had found on some websites pictures of him, pictures of his niece, pictures of their daughter.

. . .

[S]he said also that her husband . . . was running multiple websites. He was running pornography websites . . . and doing so at least to some extent from the computer that she had brought to me.

. . .

[S]he says . . . there is one . . . picture[] showing a man's private area on a child's mouth. I believe that in this photo is my husband, Matthew [] Woods.

. . .

[S]he [also] said [that her husband] left the residence on July 23[,] 2013, and . . . has not been back since.

*Id.* at 34-35, 42, and 56.

During trial, Appellant's written statement was admitted into evidence without objection. *Id.* at 60.

Corporal Roche further testified that, after Appellant completed her written statement, Appellant directed him "to various websites to show . . . where she said her husband [or daughter] was depicted." *Id.* at 37. However, as Corporal Roche testified, he did not believe that any of the pornographic images Appellant showed him depicted either Appellant's

- 6 -

husband or daughter. *Id.* at 37-42. Moreover, and contrary to Appellant's written declaration, Corporal Roche testified that a review of the computer revealed no evidence that Matthew Woods was "running any type of website." *Id.* at 58.

Further, during the trial:

> Corporal Roche provided testimony regarding his experience with the Pennsylvania State Police, and in particular, his training and experience in computer forensics. Corporal Roche testified that he received training from EnCase,[6] and that he is an EnCase certified examiner. He also testified that he is an AccessData certified examiner.[fn.1] . . . [N.T. Trial, 8/19/14, at 25-26].
>
> > [fn.1] AccessData is the maker of the Forensic Tool Kit [(hereinafter "FTK")]. [Corporal Roche testified that: "AccessData is another company in competition with EnCase. And they make a similar tool. It works perhaps a little bit differently, but its mission and function are the same, the forensic examination of storage media of computers and any type of storage media, flash drive, what have you." N.T. Trial, 8/19/14, at 26.]
>
> With regard to determining "date stamps" or "time stamps" relevant to this matter, Corporal Roche testified that he first used the EnCase program to search the hard drive of the

_____

[6] As Corporal Roche testified:

> EnCase is a company that makes a software forensic sweep for use by law enforcement and industry. It's a very expensive program that's used to be able to look into some type of media, generally speaking a computer's hard drive, and start searching for evidence.

N.T. Trial, 8/19/14, at 25.

computer brought to the police barracks by [Appellant]. The gallery function of the EnCase software allowed Corporal Roche to search through a thumbnail gallery of photographs in a timely fashion. Corporal Roche testified that he identified 43 images that he believed depicted images of child pornography.[7] Corporal Roche then used EnCase to create [an] "exact bit for bit copy of every piece of information on the [computer's] hard drive." [*Id.* at 50]. Corporal Roche then was able to examine each image to determine when it was placed on the computer.

Corporal Roche testified that the created date and time for "[j]ust about all of the images" was "August 11, 2013, between the times of about [nine] o'clock and 12 o'clock a.m." [*Id.* at 51]. He then testified that the created date and time "is the absolute most accurate time to use of when it was first put there." [*Id.*] Corporal Roche [testified] that "the original created date and time will always stay the same on the host computer." [*Id.* at 52]. In conclusion, Corporal Roche [testified] that he [was] "[a]bsolutely scientifically certain that the dates and times are that which was when the computer was used to look at these images and download these images depicting child pornography." [*Id.* at 56. Moreover, Corporal Roche testified that the images of child pornography on the computer "were all created [and] accessed on or after the period of time that Matthew Woods left the house."[8] *Id.* at 69].

Corporal Roche then testified that he used the . . . FTK from AccessData as a separate method of determining the created date and time for the pornographic images. Using this forensic tool, and comparing the results to the results reached using EnCase, "[t]he created, the modified, the last accessed, the entry modified, all these dates and times

_____

[7] During trial, the parties stipulated that "the photos found on the computer depicted children between the ages of [nine] to 11 engaging in a prohibited sexual act or simulation of such an act." N.T. Trial, 8/19/14, at 76.

[8] Again, in her August 14, 2013 written statement to the police, Appellant admitted that Matthew Woods "left the residence on July 23[,] 2013, and . . . [had] not been back since." N.T. Trial, 8/19/14, at 42.

were exactly the same to the hundredths of a second on each and every photograph." [*Id.* at 57].

[Appellant] called Dr. Linda Volonino to testify [on her behalf]. Dr. Volonino holds a Ph.D. and an MBA in Information Systems. She is a full professor at Canisius College and an associate with Robson Forensics. Dr. Volonino testified that she trained with FTK in New York City, and she teaches FTK to her students. Dr. Volonino [testified] that she has minimal training with EnCase. The [trial] court accepted Dr. Volonino as an expert in the field of computer forensics. [*Id.* at 78-83].

With regard to the reliability of the time stamps of the images at issue in this matter, Dr. Volonino testified that the time stamps "have no meaning." [*Id.* at 87]. She explained this opinion by [testifying:] "[b]ecause the way EnCase treats deleted files, the software, specifically EnCase software, will create a folder called logged files. And when it does, it puts all of these deleted files into the lost files folder because it doesn't know what to do with them, that is, it cannot associate it with any folder. And EnCase admits that once files are deleted the time stamps are unreliable." [*Id.*] Dr. Volonino concluded that the time stamps on the jpeg files that came to her in this case [were] unreliable. [*Id.* at 88].

When questioned about Corporal Roche's use of FTK, and the fact that the time stamp results were identical to the time stamp results using EnCase, Dr. Volonino [testified] that she "was not provided with any of [Corporal Roche's] results from FTK." [*Id.* at 89]. Dr. Volonino then [testified] that the time stamp results using FTK would be unreliable[] because whether a technician is using EnCase or FTK, when a file is deleted, the file system deletes the time stamp, and the tool kit cannot recreate it. [*Id.* at 88].

Trial Court Opinion, 5/19/15, at 6-9 (some internal citations and internal capitalization omitted).

In addition to the above evidence, Corporal Roche testified that, in his opinion, the child pornography did not "inadvertently" appear on Appellant's

computer. N.T. Trial, 8/19/14, at 58. Rather, Corporal Roche testified: that the child pornography on the computer was the result of "at least [three] hours of searching the internet for these images" and that "it [was] a fair statement [to say] that on August 11[, 2013,] between th[e] hours of [nine] and 11, [Appellant] went to th[e child pornography] websites." *Id.* at 58-59 and 74-75.

The trial court then charged the jury. With respect to the sexual abuse of children count, the court charged the jury as follows:

> to find [Appellant] guilty of this offense, you must find that each of the following [four] elements have been proven beyond a reasonable doubt, first, that [Appellant] possessed, controlled, [or] intentionally viewed the computer depiction. And we're going to say that the term intentionally viewed means that [Appellant] deliberately, purposely and voluntarily viewed material depicting a child of under 18 years of age engaged in a prohibited sexual act or the simulation of such an act. The term does not mean the inadvertent or accidental viewing of such material. Second, that the item depicted a child engaging in a prohibited sexual act or the simulation of such an act. Third, that the child was at the time under the age of 18. And, fourth, that [Appellant] did so knowingly, in other words, [Appellant] was aware of what she possessed or controlled, she was aware of the nature of its contents and that the child involved was under the age of 18.

N.T. Trial, 8/19/14, at 136-137.

Appellant did not object to any portion of the trial court's jury charge. *Id.* at 143.[9]

_____

[9] We note that, in response to a jury question, the trial court recharged the jury on the elements for both charges. *See* N.T. Trial, 8/19/14, at 146-147. *(Footnote Continued Next Page)*

The jury found Appellant guilty of both sexual abuse of children and unsworn falsification to authorities.

On December 15, 2014, the trial court sentenced Appellant to serve a jail term of not less than nine months nor more than two years less one day, followed by two years of probation. The trial court denied Appellant's timely post-sentence motion on May 19, 2015 and Appellant filed a timely notice of appeal.[10] Appellant raises three claims on appeal:

> [1.] Whether the trial court erred by denying the motion to suppress statements inasmuch as the statements of [Appellant] below were involuntary under the special circumstances of the interrogation when obtained?
>
> [2.] Whether the trial court erred by denying the motion for judgment of acquittal on the conviction for child pornography inasmuch as the information only charged such crime for knowing possession or control of child pornography, but not for intentional viewing of child pornography, and the evidence did not suffice to prove knowing possession or control of child pornography?
>
> [3.] Whether the trial court erred by denying the motion for judgment of acquittal on the conviction for unsworn falsification to authorities inasmuch as the evidence did not suffice to prove the element that [Appellant] made a written false statement which she did not believe to be true?

*(Footnote Continued)* ─────────────────

The recharge was, for all intents and purposes, identical to the original charge and Appellant did not object to the trial court's recharge. **Id.**

[10] On April 23, 2015, the trial court granted Appellant's motion to extend the deadline for deciding the post-sentence motion. Trial Court Order, 4/23/15, at 1; **see also** Pa.R.Crim.P. 720(B)(3)(b) ("[u]pon motion of the defendant within the 120-day disposition period, for good cause shown, the judge may grant one 30-day extension for decision on the [post-sentence] motion").

Appellant's Brief at 5 (some internal capitalization omitted).[11]

Appellant first claims that the trial court erred when it denied her motion to suppress the oral and written statements she made to Corporal Roche on August 14, 2013. This claim fails.

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." **Commonwealth v. Wallace**, 42 A.3d 1040, 1047-1048 (Pa. Super. 2012) (*en banc*); **see also** Pa.R.Crim.P. 581(H). With respect to an appeal from the denial of a motion to suppress, our Supreme Court has declared:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Eichinger**, 915 A.2d 1122, 1134 (Pa. 2007) (internal citations omitted). "It is within the suppression court's sole province as

_____

[11] For ease of discussion, we have re-numbered Appellant's claims on appeal.

factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, we note that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing.[12] *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

"To safeguard an uncounseled individual's Fifth Amendment privilege against self-incrimination, suspects subject to custodial interrogation by law enforcement officers must be warned that they have the right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney." *In re R.H.*, 791 A.2d 331, 333 (Pa. 2002) (plurality); *Miranda*, 384 U.S. at 444-445. "If a person is not advised of his *Miranda* rights prior to custodial interrogation by law enforcement officers, evidence resulting from such interrogation cannot be used against him." *In re R.H.*, 791 A.2d at 333; *Miranda*, 384 U.S. at 444-

_____

[12] On October 30, 2013, our Supreme Court decided *In re L.J.* In *L.J.*, our Supreme Court held that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d at 1087. Prior to *L.J.*, this Court routinely held that, when reviewing a suppression court's ruling, our scope of review included "the evidence presented both at the suppression hearing and at trial." *See Commonwealth v. Charleston*, 16 A.3d 505, 516 (Pa. Super. 2011), *quoting* *Commonwealth v. Chacko*, 459 A.2d 311, 317 n.5 (Pa. 1983). *L.J.* thus narrowed our scope of review of suppression court rulings to the evidence presented at the suppression hearing. In this case, Appellant's suppression hearing occurred after *L.J.* was decided. Therefore, the procedural rule announced in *L.J.* applies to the case at bar.

445. However, "[a]n officer's obligation to administer *Miranda* warnings attaches . . . only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *In re V.H.*, 788 A.2d 976, 980 (Pa. Super. 2001), *quoting* *Stansbury v. California*, 511 U.S. 318, 322-323 (1994) (some internal quotations omitted).  As this Court has summarized:

> The warnings articulated by [*Miranda*] become mandatory whenever one is subjected to custodial interrogation.  The United States Supreme Court has defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." [*Miranda*, 384 U.S. at 444-445].
>
> Police detentions only become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of formal arrest.
>
> Whether a person is in custody for *Miranda* purposes depends on whether the person is physically deprived of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation.  Moreover, the test for custodial interrogation does not depend upon the subjective intent of the law enforcement officer interrogator.  Rather, the test focuses on whether the individual being interrogated reasonably believes his freedom of action is being restricted.
>
> The factors a court utilizes to determine, under the totality of the circumstances, whether a detention has become so coercive as to constitute the functional equivalent of arrest include:  the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions.  The fact that a police investigation has

- 14 -

focused on a particular individual does not automatically trigger "custody," thus requiring **Miranda** warnings.

**Commonwealth v. Baker**, 963 A.2d 495, 500-501 (some internal citations, quotations, and corrections omitted).

Appellant claims that the trial court erred when it failed to suppress the oral and written statements that she made to Corporal Roche on August 14, 2013. As noted above, on August 14, 2013, Appellant "voluntarily and of her own free will" appeared at the police station and then engaged in a "friendly" interview with Corporal Roche. Appellant's Motion to Suppress, 7/10/14, at ¶¶ 8 and 15-16. However, during this interview, Appellant proffered oral and written statements that were eventually used against her at trial.

On appeal, Appellant concedes that her interview with Corporal Roche that day was non-custodial in nature. Appellant's Brief at 20-21 (conceding that the interview was non-custodial). Nevertheless, Appellant claims that the "special circumstances" of this case resulted in her statements being involuntary and subject to suppression. Specifically, Appellant claims:

> even a non-custodial interrogation may result in an involuntary statement. A non-custodial interrogation might possibly in some situations by virtue of some special circumstances result in an involuntary statement. **See Beckwith v. United States**, 425 U.S. 341, 347-348 [] (1976). It is submitted that Appellant's circumstances were special in that Corporal Roche formed the opinion that she was reporting child pornography and that it existed on the computer, but that he questioned her motivation. The interrogation became, at that point, a game of cat-and-mouse regardless of how it began. Thus, the trial court erred by failing to suppress the statements as involuntary.

*Id.* at 21-22 (some internal citations omitted).

As Appellant correctly notes, in ***Beckwith***, the United States Supreme Court recognized "that non[-]custodial interrogation might possibly in some situations, by virtue of some special circumstances, be characterized as one where the behavior of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined." ***Beckwith***, 425 U.S. at 347-348 (internal quotations, citations, and corrections omitted). However, the "special circumstances" referenced in ***Beckwith*** do not exist in the case at bar. Indeed, viewing the evidence in the light most favorable to the Commonwealth, the relevant evidence in this case demonstrates that: Appellant "voluntarily and of her own free will" went to the police station on August 14, 2013 to report that her husband committed a crime; Corporal Roche spoke to Appellant in "the main area of [his] office," at "a large conference table;" Appellant "was free to leave at any time" during the interview; Corporal Roche never read Appellant ***Miranda*** warnings; although Appellant's story "seemed unusual," Corporal Roche "had no reason to disbelieve the main portion of [Appellant's] child pornography accusations" against her husband; during the interview, Corporal Roche "had no belief that criminal activity by [Appellant] had occurred;" the entire interaction between Corporal Roche and Appellant on August 14, 2013 was "friendly;" and, Appellant left the police station at the end of the interview. N.T. Suppression Hearing, 8/7/14,

at 7, 10-11 and 24; Appellant's Motion to Suppress, 7/10/14, at ¶¶ 8 and 15-16.

To quote **Beckwith**, "the entire interview [in this case] was free of coercion." **Beckwith**, 425 U.S. at 348. As such, Appellant's claim that the trial court erred in denying her motion to suppress fails.

Next, Appellant claims that the evidence was insufficient to support her conviction for sexual abuse of children, 18 Pa.C.S.A. § 6312(d)(1). This claim fails.

We review Appellant's sufficiency of the evidence challenge under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559-560 (Pa. Super. 2011) (*en banc*), *quoting* **Commonwealth v. Hutchinson**, 947 A.2d 800, 805-806 (Pa. Super. 2008).

According to Appellant, although the Commonwealth charged her with violating 18 Pa.C.S.A. § 6312(d)(1), the Commonwealth's Information only quoted a portion of the statute. In particular, Appellant notes, the Information only declared that Appellant had "[k]nowingly possessed or controlled" child pornography. Appellant's Brief at 12. However, 18 Pa.C.S.A. § 6312(d)(1) not only criminalizes the knowing "possess[ion] or control[]" of child pornography, but it also criminalizes the "intentional[] view[ing]" of child pornography. 18 Pa.C.S.A. § 6312(d)(1). Appellant argues that, since the Information failed to charge her with "intentionally view[ing]" child pornography, she could not have been lawfully convicted of this aspect of the crime. Appellant's Brief at 15. Appellant then claims that the "Commonwealth presented no competent evidence of [Appellant's] knowing possession or control of the files on or about August 14, 2013" – and that the evidence was thus insufficient to support her conviction for violating 18 Pa.C.S.A. § 6312(d)(1). **See id.** Appellant's claim fails for at least two independent reasons.

First, Appellant never challenged the sufficiency of the Commonwealth's Information at the trial level. Moreover, during trial, the trial court charged the jury on all aspects of 18 Pa.C.S.A. § 6312(d)(1). Specifically, the trial court instructed the jury that, to find Appellant guilty of

- 18 -

violating 18 Pa.C.S.A. § 6312(d)(1), the jury must find "that [Appellant] **possessed, controlled, [or] intentionally viewed** the computer depiction" of child pornography.  N.T. Trial, 8/19/14, at 137 (emphasis added); ***see also*** N.T. Trial, 8/19/14, at 146-147 (during the recharge to the jury, the trial court stated:  "[t]o find [Appellant] guilty of [sexual abuse of children,] you must find . . . first, that [Appellant] possessed, controlled, or intentionally viewed a computer depiction" of child pornography).  Appellant did not object to this jury instruction.

On appeal, Appellant acknowledges that she failed to object to the trial court's jury charge.  Appellant's Brief at 15.  However, she claims that she still could not have been convicted of "intentionally viewing" child pornography because "due process does not permit [her to be] convicted of an uncharged classification of 18 Pa.C.S.A. § 6312(d)(1).  ***Id.***  This claim fails.

Our Supreme Court has long-since abrogated the "basic and fundamental error" doctrine in the criminal law arena.  ***See Commonwealth v. Clair***, 326 A.2d 272, 274 (Pa. 1974).  To preserve an issue for appellate review, it is axiomatic that the issue must first be raised in the trial court.  Pa.R.A.P. 302(a).  Indeed, with respect to erroneous jury instructions, our Rules of Criminal Procedure explicitly declare:  "[n]o portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate."  Pa.R.Crim.P. 647(b).

- 19 -

In the case at bar, Appellant failed to object to the erroneous jury charge and the trial court was thus never given the opportunity to correct its mistake. This results in waiver of the issue, notwithstanding the fact that the error implicated Appellant's due process rights. Certainly, when our Supreme Court eliminated the basic and fundamental error doctrine from our jurisprudence, our high Court **anticipated** that due process violations would and could be waived on direct appeal. As our Supreme Court declared: "abrogating the [basic and fundamental error] doctrine in the criminal area may be even more compelling [than eliminating the doctrine from our civil law] since **any error that deprives a defendant of due process** can more properly be remedied by a claim of ineffective assistance of counsel." *Clair*, 326 A.2d at 274 (emphasis added); *see also Commonwealth v. Matty*, 619 A.2d 1383, 1386-87 (Pa. Super. 1993) (where the information charged the defendant with solicitation to commit theft by receiving stolen property, but where the trial court instructed the jury on the elements of solicitation to commit theft of services, the defendant "waived [the] issue regarding the legality of his conviction for solicitation when he failed to object to the court's instructions to the jury on the elements of the offense").

Thus, since Appellant failed to object to the trial court's jury instruction, Appellant "waived [the] issue regarding the legality of [her] conviction for" "intentionally viewing" child pornography. *Matty*, 619 A.2d at 1386-87. Moreover, since Appellant's sufficiency of the evidence claim

- 20 -

was logically dependent upon this Court concluding that the defect in the Information precluded her conviction for "intentionally viewing" child pornography, Appellant's sufficiency of the evidence claim necessarily fails.

At any rate, Appellant's sufficiency claim fails because the evidence was sufficient to prove that Appellant "[k]nowingly possessed or controlled" child pornography. As the trial court cogently explained:

> Corporal Roche testified that [Appellant] presented herself at the [Pennsylvania] State Police Barracks on August 14, 2013, with the subject computer. Corporal Roche further testified that [Appellant] "was essentially bringing me the computer because she wanted me to take a look at what was on it because she wanted to tell me that there was child pornography images on the computer and that they were put there by her husband, Matthew Woods." [N.T. Trial, 8/19/14, at 31]. Finally, with regard to Corporal Roche's opinion about the nature of the images that he found, he stated that he "found in excess of 40 images and specifically 43 images of what I believed depicted child pornography of some sort, whether it be the focal point of the genital area of a person under the age of 18, certainly a prepubescent person or they are engaged in sex of some sort or simulation thereof or masturbation. These would all meet the definition of child pornography. [*Id.* at 49].
>
> Given the testimony of Corporal Roche, and viewing that testimony in the light most favorable to the Commonwealth, it is easy to see how the jury believed that [Appellant] purposely downloaded images of child pornography on the family's computer for the purpose of reporting the presence of the images to the Pennsylvania State Police, and all with the goal of having Matthew Woods, her estranged husband, charged with criminal offenses of a sexual nature. By necessity, such a finding means that [Appellant] knowingly, as defined in 18 Pa.C.S.A. [§ 302(b),] downloaded and possessed images containing child pornography. In other words, [Appellant] was aware of her conduct and the nature of her conduct, because it was her express purpose to

download child pornography, possess these images, and take these images to the Pennsylvania State Police; her plan would not [have] work[ed] without these actions.

Trial Court Opinion, 5/19/15, at 14-15 (some internal citations omitted).

We agree with the trial court. Therefore, we conclude that the evidence was sufficient to support Appellant's conviction for sexual abuse of children under 18 Pa.C.S.A. § 6312(d)(1). Appellant's claim to the contrary fails.

For Appellant's final claim on appeal, Appellant contends that the evidence was insufficient to support her conviction for unsworn falsification to authorities; the conviction was based upon the written statement that Appellant made on August 14, 2013, in the Pennsylvania State Police Barracks. Appellant's claim on appeal is waived.

Appellant was convicted of unsworn falsification to authorities under 18 Pa.C.S.A. § 4904(a)(1). This section declares:

> **(a) In general.**--A person commits a misdemeanor of the second degree if, with intent to mislead a public servant in performing his official function, he:
>
> (1) makes any written false statement which he does not believe to be true.

18 Pa.C.S.A. § 4904(a)(1).

As is apparent, before this Court may consider Appellant's claim that the evidence was insufficient to support her Section 4904(a)(1) conviction, this Court must be able to review the entire written statement that Appellant made on August 14, 2013. Yet, Appellant has failed to include the written

statement in the certified record to this Court. Therefore, we must conclude that Appellant's final claim on appeal is waived. ***Commonwealth v. Saranchak***, 675 A.2d 268, 275 (Pa. 1996) ("[i]t is appellant's responsibility to ensure that any relevant related matter be filed or made part of the original record" and, where appellant fails to ensure that the certified record is sufficient to review the claims raised on appeal, the claims are waived); ***Commonwealth v. Kennedy***, 868 A.2d 582, 593 (Pa. Super. 2005) ("this Court may not consider anything that is not part of the official certified record: [a]ny document which is not part of the official certified record is considered to be non-existent") (internal quotations and citations omitted).

Judgment of sentence affirmed.

Panella, J. joins the decision.

Platt, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/11/2016