J-A20011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TIMOTHY MARTIN DUKE | : | |
| | : | |
| Appellant | : | No. 2093 MDA 2016 |

Appeal from the Judgment of Sentence November 22, 2016
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0007563-2015

BEFORE:  GANTMAN, P.J., PANELLA, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.:              **FILED OCTOBER 24, 2017**

Appellant, Timothy Martin Duke, appeals from the judgment of sentence entered in the York County Court of Common Pleas, following his stipulated bench trial conviction for manufacturing with intent to deliver.[1] We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.  We add that Appellant timely filed a notice of appeal on December 21, 2016.  On December 22, 2016, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and after the court granted an extension, Appellant

---

[1] 35 P.S. § 780-113(a)(30).

timely complied on January 27, 2017.

Appellant raises the following issue for our review:

WHETHER THE SEARCHES AND SEIZURES CONDUCTED BY THE TROOPERS ON [APPELLANT'S] PROPERTY WITHOUT VALID SEARCH WARRANTS VIOLATED [APPELLANT'S] RIGHTS UNDER THE FOURTH AMENDMENT [OF THE UNITED STATES CONSTITUTION] AND ARTICLE I, SECTION 8 OF THE PENNSYLVANIA CONSTITUTION[?]

(Appellant's Brief at 4).

Appellant argues the troopers did not have a well-founded, reasonable belief that Appellant's son, the subject of the arrest warrant, resided at Appellant's property and was present when the troopers entered onto Appellant's property. Appellant asserts the information available to the troopers was plainly insufficient to allow them to come onto Appellant's property to inquire about Appellant's son. Specifically, Appellant claims the troopers' information was based solely on a statement from some unidentified person at Appellant's last known address, who said Appellant's son might be found staying with Appellant. Appellant characterizes this information from an unknown source as uncorroborated and speculative. In short, Appellant maintains the troopers lacked firsthand information, a reliable informant, or an adequate factual basis to believe Appellant's son resided with Appellant. Appellant contends the troopers required a search warrant to enter what he calls "the protected curtilage" of Appellant's property without his consent or exigent circumstances. Appellant maintains that absent his consent or exigent circumstances, the troopers were

"trespassing" on his property; and the plain view doctrine cannot justify their seizure of the marijuana plants in Appellant's garage.

Appellant continues the troopers cannot create an exigency so they can claim an exception to the warrant requirement, which they did by remaining on Appellant's property after he had made clear he did not consent to the troopers' presence. Finally, Appellant avers the court's reliance on the right of the troopers to engage in a protective sweep or a search incident to his arrest is misplaced, where both their entry on his property and his arrest were illegal because there was no danger or need for a protective sweep under these circumstances. Appellant concludes (1) the evidence obtained as a result of these events should have been suppressed, (2) his conviction should be reversed, and (3) his judgment of sentence should be vacated. We cannot agree.

We review the denial of a suppression motion as follows:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> > [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Williams*, 941 A.2d 14, 26-27 (Pa.Super. 2008) (*en*

- 3 -

*banc*) (internal citations and quotation marks omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Clemens***, 66 A.3d 373, 378 (Pa.Super. 2013) (quoting ***Commonwealth v. Gallagher***, 896 A.2d 583, 585 (Pa.Super. 2006)).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Harry M. Ness, we conclude Appellant's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (***See*** Trial Court Opinion, filed February 23, 2017, at 6-16) (finding: troopers had sufficient reasonable belief that subject of arrest warrant, Appellant's son, could be located at Appellant's residence; during encounter with troopers on Appellant's driveway, he became nervous and backed away toward open garage; from driveway, officers could see several weapons inside open garage, including gun; to ensure Appellant did not go for weapon, troopers followed Appellant toward garage; as troopers approached open garage, they smelled marijuana; obvious weapons in open garage presented significant threat of danger to troopers and constituted exigency to permit protective sweep for troopers' safety; search of garage was limited and made for troopers' safety; troopers' cursory visual inspection inside garage revealed marijuana plants in plain view; troopers arrested Appellant and collected marijuana plants from garage; troopers obtained valid search

warrant for Appellant's residence and seized additional evidence; all evidence was lawfully obtained). Accordingly, we affirm on the basis of the trial court opinion.

Order affirmed.

Judge Panella concurs in the result.

President Judge Emeritus Ford Elliott notes her dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/24/2017

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA :     NO. CP-67-CR-7563-2015

v. :

TIMOTHY MARTIN DUKE, :
         Appellant :

## OPINION IN SUPPORT OF ORDER PURSUANT TO Pa.R.A.P. 1925(a)

Appellant, Timothy Duke, by and through his attorney Gerald A. Lord, Esquire, appeals to the Superior Court of Pennsylvania from his conviction and judgment of sentence. On January 27, 2017, the Appellant filed the Statement of Matters Complained of on Appeal. This Court now issues this 1925(a) Opinion.

## PROCEDURAL HISTORY

An omnibus pre-trial hearing was held on June 29, 2016, and the Omnibus Pre-trial Motion, which included a Motion to Suppress, was denied on June 30, 2016. A non-jury trial was scheduled November 22, 2016, where the

1

Appellant and Commonwealth stipulated to the Appellant being guilty of Manufacturing Marijuana.

## MATTERS COMPLAINED OF ON APPEAL

For clarity, this court summarizes the grounds raised by Appellant on appeal. The Appellant raises the following grounds for error:

1. Whether there was a lawful entry, search and seizure?

2. Whether the evidence seized during the search should have been suppressed?

## FACTUAL BACKGROUND

An Omnibus Pre-Trial Hearing was held in regard to an Omnibus Pre-trial Motion that included a Motion to Suppress. The following facts were presented during this hearing. On October 23, 2015, troopers Joshua Koach, Kyle Yeager and Alan Krall drove to the Appellant's residence. The officers had been notified by PSP Lancaster that the subject of an arrest warrant was living at Appellant's home.[1] In the driveway of the residence, Trooper Yeager and Trooper Koach spoke with the Appellant and told him they were serving an

---

[1] Omnibus Pre-Trial Hearing, *Commonwealth v. Timothy Duke 7563-2015*, pg. 8 (June 29, 2016).

arrest warrant, and the Appellant told them that the subject of the arrest warrant was his son, who was incarcerated at that time.[2] According to Trooper Koach, Trooper Krall then asked the Appellant about looking through the house to see if the subject was there, and Appellant became nervous and did not want them near the house.[3]

Then, Appellant began walking away toward his two-car garage, which was attached to the residence.[4] One of the two garage doors was open.[5] They followed Appellant as he walked back to the garage because his demeanor suggested someone was inside the house, because they did not know his intentions or if he was violent, and because they wanted to make sure that he did not go for a weapon.[6] While all of the officers were on the driveway, Troopers Koach and Yeager saw a compound bow and arrow, a crossbow, and a long gun or rifle in the garage since the garage door was open.[7] As they got

---

[2] *Id.* at 11, 12.
[3] *Id.* at 13.
[4] *Id.* at 14, 41-42.
[5] *Id.*
[6] *Id.* at 30.
[7] *Id.* at 14, 15, 42 (In contrast, Appellant had testified during the hearing that it would not have been possible for the officers to have seen the bow and arrow, crossbow or gun before entering the garage since a car was in front of the open garage door).

3

closer to the garage, the officers smelled marijuana.[8] When Appellant was halfway inside the garage, Trooper Koach told Appellant to stop and to not move toward the gun.[9] When they crested just inside the garage doorway, they observed five or six marijuana plants hanging against the interior wall.[10] After being asked what the plants were, Appellant had told them that it was his marijuana.[11]

Appellant was then placed under arrest, and the troopers collected the marijuana plants that they had observed from the garage.[12] At that time, no one entered the residence except for when the defendant gave permission to put Appellant's dog inside the house[13] and when Trooper Krall had opened the door to the residence to make sure that it was locked so that he could secure it until they got a search warrant.[14]

---

[8] *Id.* at 15, 42.
[9] *Id.* at 15.
[10] *Id.* at 16, 42, 43.
[11] *Id.* at 16.
[12] *Id.* at 17.
[13] *Id.* at 8, 43.
[14] *Id.* at 14, 64-65.

4

This Court denied Appellant's Omnibus Pretrial Motion, finding that the entry into the garage was for officer safety.[15]

On November 22, 2016, the Commonwealth and Defendant stipulated that the Defendant was guilty of manufacturing marijuana.[16] On that same date, the Commonwealth read a stipulation on the record that discussed which witnesses would be called if there was a trial and what the witnesses would have testified to, including that the troopers, who went to the property to serve an arrest warrant.[17] They would have testified that they had made a warrantless entry into the attached garage, where they recovered what was believed to be marijuana hanging from the ceiling and that the officers made a brief entry into the house but did not complete a search.[18] They would also have stipulated that a search warrant was later obtained and additional amounts of cash, paraphernalia and marijuana were found.[19] Both parties further stipulated that the Appellant owns and lives in the residence and at all times had access to the

---

[15] Order, *Commonwealth v. Duke 7563*-2015 (November 22, 2016; filed December 30, 2016).

[16] Transcript, *Commonwealth v. Duke 7563-2015*, pg. 5, 7 (November 22, 2016; filed December 30, 2016).

[17] *Id.* at 2-3.

[18] *Id.*

[19] *Id.* at 3.

garage, and that Troopers Koach's and Yeager's testimony at the omnibus pre-trial hearing was incorporated by reference.[20] Also, both parties stipulated that an expert in in packaging and sale of marijuana in that county concluded within a reasonable degree of professional certainty that the substance recovered was marijuana.[21] However, the parties did not stipulate about "the facts leading up to the warrantless entry into the garage and/or residence."[22]

## DISCUSSION

### A. Whether the entry, search and seizures were lawful?

Here, the entry, search, and seizures were lawful, despite Appellant's arguments to the contrary. A warrantless entry and search to find the subject of an arrest warrant may be lawful when police have a reasonable and well-founded belief that the residence was the residence of the subject of the arrest warrant.[23] Further, a warrantless search is permissible when there are exigent

---

[20] *Id.* at 4.

[21] *Id.* at 4-5.

[22] *Id.* at 5.

[23] *Commonwealth v. Migdalia Conception*, 657 A.2d 1298, 1300 (Pa. Super. Ct. 1995).

circumstances.[24] Police officers are also permitted to enter a residence to conduct a protective sweep following exigent circumstances when the officers do not search but rather "'looked into' the various rooms to make sure nobody else was present."[25]

In *Commonwealth v. Conception*, police went to a residence with an arrest warrant for someone other than the defendant.[26] The address on the warrant matched the subject's address, and this address was used because the detective in that case had reliable information from the Philadelphia Police Department that the subject of the arrest warrant was staying at that residence.[27] The Superior Court in *Conception* concluded that "the police did not need a search warrant to enter appellant's apartment to search" for the subject of the arrest warrant.[28] The Pennsylvania Superior Court reasoned that it was "clear that the police officer had a reasonable and well-founded belief that [the

---

[24] *Commonwealth v. Griffin*, 785 A.2d 501, 505 (Pa. Super. Ct. 2001). Note that these are not the only exceptions to a warrantless entry and search. Rather, these are the exceptions that are applicable in this case.

[25] *Commonwealth v. Johnson*, 68 A.3d 930, 945–46 (Pa. Super. Ct. 2013).

[26] *Conception*, 657 A.2d 1298, 1300.

[27] *Id.*

[28] *Id.* (Further, the Superior Court in that case distinguished itself from *Steagald* on the grounds that unlike the *Steagald* case (where the officers knew the residence belonged to a third party), the subject of the arrest warrant in *Conception* was reasonably believed by police to be a resident of that place of residence).

7

residence] . . . was the residence of at least one of the fugitives. . . .The subsequently issued arrest warrant listed [the residence] as one of [the subject of the arrest warrant's] addresses."[29]

Similarly, here, the officers had a well-founded and reasonable belief that the subject of the arrest warrant, who was Appellant's son, was living at that residence based on information given to them by PSP Lancaster.

In addition, searches and seizures in a home without a warrant are presumed to be unreasonable.[30] "Absent consent or exigent circumstances, private homes may not be constitutionally entered to conduct a search or to effectuate an arrest without a warrant, even where probable cause exists."[31] Exigent circumstances occur when "the need for prompt police action is imperative, either because evidence is likely to be destroyed ... or because there exists a threat of physical harm to police officers or other innocent individuals."[32] Danger is an exigent circumstance.[33]

---

[29] *Id.*
[30] *Commonwealth v. Roland*, 637 A.2d 269, 271 (Pa. 1994).
[31] *Commonwealth v. Griffin*, 785 A.2d 501, 505 (Pa. Super. Ct. 2001).
[32] *Commonwealth v. Copeland*, 955 A.2d 396, 400 (Pa. Super. Ct. 2008).
[33] *Commonwealth v. English*, 839 A.2d 1136, 1141 (Pa. Super. Ct. 2003).

In determining whether a warrantless search is justified by exigent circumstances, "a court must balance the individual's right to be free from unreasonable intrusions against the interest of society in quickly and adequately investigating crime and preventing the destruction of evidence."[34] Though, police cannot create exigent circumstances to use that as justification for not having a warrant.[35] An officer's "mere supposition that [a person] might have a gun is not enough to permit the police to ignore [that person]'s constitutional right to freedom from unreasonable searches and seizures."[36] "'The fact ... [that] police *may be* in danger does not justify the suspension of the fourth amendment." [37]

In addition, *Commonwealth v. Weik* provided an excellent summary of prior case law that found exigent circumstances when police officers were in danger. The Court there stated:

> The instant case is thus distinguishable from prior cases where we have found exigent circumstances based on the existence of some threat or danger to police officers or the public. (exigent circumstances exist where police have reason to believe that there is a life-threatening emergency); *Commonwealth v. Curry*, . . . 494

---

[34] *Copeland*, 955 A.2d 396, 400 (Pa. Super. Ct. 2008).

[35] *Commonwealth v. Melendez*, 676 A.2d 226, 230 (Pa. 1996).

[36] *Commonwealth v. McDonel*, 601 A.2d 302, 307 (Pa. Super. Ct. 1991).

[37] *Id.* (emphasis in original and internal citation omitted).

9

A.2d 1146, 1150 ([Pa. Super. Ct.] 1985) (exigent circumstances exist where police investigate dangerous shooting incident which had just occurred, and where police find gun while securing premises after arresting defendant on porch); *Commonwealth v. Hinkson*, . . . 461 A.2d 616, 618–19 ([Pa. Super. Ct.] 1983) (exigent circumstances exist where man is shot in front of appellant's house, appellant has reputation for using guns, only two of five shots fired are accounted for, other family members present in house, and thus police could conclude that person in house may be hurt, or hostage situation may exist).[38]

Here, there was a warrantless entry into Appellant's garage. However, the circumstances here fall under the exigent circumstances exception. Here, the officers believed that the subject of the arrest warrant lived at the home, Appellant's behavior was suspicious, and as he was backing toward his garage, the officers could see a variety of weapons including a gun. The officers did not know Appellant's intentions or if Appellant was violent. The officers, here, had followed for officer safety, as the weapons, especially the gun, presented a significant threat of danger to the police officers.

Police officers are also permitted to enter a residence to conduct a protective sweep following exigent circumstances when the officers do not search but rather "'looked into' the various rooms to make sure nobody else

---

[38] *Commonwealth v. Weik*, 521 A.2d 44, 48 (Pa. Super. Ct. 1987).

was present."[39] A protective sweep is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." [40] In *Commonwealth v. Potts*, the court described the two levels of protective sweeps. The two levels are defined thus:

> [A]s an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."[41]

As to the first level of a protective sweep, police officers may make "cursory visual inspections of spaces immediately adjacent to the arrest scene, which could conceal an assailant."[42] As to the second level of a protective sweep, this level allows for "a search for attackers further away from the place of arrest, provided that the officer who conducted the sweep can articulate

---

[39] *Commonwealth v. Johnson*, 68 A.3d 930, 945–46 (Pa. Super. Ct. 2013).
[40] *Commonwealth v. Potts*, 73 A.3d 1275, 1281–82 (Pa. Super. Ct. 2013) (citing *Maryland v. Buie*, 494 U.S. 325, 327 (1990)).
[41] *Id.* (internal citations omitted).
[42] *Id.* (internal citations omitted).

11

specific facts to justify a reasonable fear for the safety of himself and others."[43]

Further,

> [i]f a suspect is dangerous, he is no less dangerous simply because he is not arrested. If, while conducting a [protective sweep], the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances.[44]

If the protective sweep was made here, it was limited. Here, the officers made cursory visual inspections around the area that Appellant was arrested. Any other search prior to the search warrant was limited. They had opened the door with Appellant's consent to let his dog inside, though they were still unaware at that time whether the subject of the arrest warrant was inside. They had also opened a door to see if it was secure while they waited for an arrest warrant. Because they saw the marijuana hanging in the garage, they cannot be required to ignore it.

Here, the search was lawful. For example, the marijuana was in plain view once the officers were inside the garage pursuant to exigent

---

[43] *Id.* (internal citations omitted).
[44] *Id.* (internal citations omitted).

circumstances. In *Commonwealth v. Weik*, officers went onto the defendant's property to enforce an ordinance.[45] At about 50 feet away from a shed, they saw slot machines inside the shed through the window.[46] "Because the officers were lawfully in position to make this view, the observation was not an "intrusion into a constitutionally protected area." [47]

In *Weik*, the court stated that there are two categories of cases under the plain view doctrine. The first line of cases includes "those situations in which the "view" takes place *after* an intrusion into a constitutionally protected area."[48] In this first line of cases, "if the original intrusion is justified, such as by 'consent, hot pursuit, warrant or other, objects sighted in plain view will be admissible, ... so long as the view was inadvertent.'"[49]

The second line of cases include: "situations where the view takes place *before* any intrusion into a constitutionally protected area."[50] The second line of cases is different than the first line of cases for the following two reasons:

---

[45] *Weik*, 521 A.2d 44, 47 (Pa. Super. Ct. 1987) (internal citations omitted).
[46] *Id.* (internal citations omitted).
[47] *Id.* (internal citations omitted).
[48] *Id.* at 44, 46 (internal citations omitted) (emphasis in original).
[49] *Id.*
[50] *Id.* (internal citations omitted) (emphasis in original).

13

First, because no intrusion into a constitutionally protected area takes place, fourth amendment rights are not involved and the requirement that the view be inadvertent is not applicable. Secondly, the warrantless seizure of evidence cannot be justified by the plain view alone. It is generally held that the mere looking at that which is open to view is not a search.... [Thus,] [i]n those situations in which no intrusion into a constitutionally protected area occurs, no search is made.[51]

The court in *Weik* further stated that "[a]ccordingly, the warrantless seizure cannot be justified by the plain view doctrine alone; rather, the seizure here is justifiable only if exigent circumstances excuse the officers' failure to get a warrant."[52]

Here, the guns were observed through the open garage door prior to entry of the garage, which would make it so that this observation fell under the second line of cases described in *Weik*. The officers' "mere looking" into the garage is not a search and does not require that their view be inadvertent. In regard to the weapons, no search was made.

The observation of the marijuana plants were made just cresting into the garage, which would mean this would likely fall in line in the first line of cases.

---

[51] *Id.* (internal citations omitted).
[52] *Id.* at 44, 47 (internal citations omitted).

However, this intrusion was justified due to officer safety and exigent circumstances.

Further view into the house was made for officer safety and had also been with Appellant's consent to let the dog inside. Other evidence that was seized from the residence itself and any other search in the house was made pursuant to a search warrant.

The Appellant argues that any evidence seized would be fruit of the poisonous tree. "[F]or evidence to be fruit of the poisonous tree, that evidence must be discovered as a result of an illegal search."[53] "The 'fruit of the poisonous tree' doctrine excludes evidence from, or acquired as a consequence of, lawless official acts."[54] Here, the evidence is not fruit of the poisonous tree because it was not the result of an illegal search.

For the reasons above, this Court respectfully requests that the Superior Court find the entry, search, and seizures lawful.

---

[53] *Commonwealth v. Gatlos*, 76 A.3d 44, 63 (Pa. Super. Ct. 2013).

[54] *Commonwealth v. Johnson*, 68 A.3d 930, 946 (Pa. Super. Ct. 2013)(internal citations omitted).

***b. Whether the evidence seized during the search should have been suppressed?***

Appellant argues that the trial court erred when it did not suppress the evidence seized during the search of Appellant's residence. When reviewing whether a trial court properly denied a motion to suppress evidence, the following standard of review is used:

> [the] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, [the Superior Court] may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the Superior Court is] bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.[55]

Following the omnibus pre-trial hearing, this court had denied Appellant's Motion to Suppress, which was contained in his Omnibus Pre-trial Motion. For the reasons listed in the above section, this Court submits that the suppression court's findings were supported by the record and drew the correct

---

[55] *Commonwealth v. Hoppert*, 39 A.3d 358, 361–62 (Pa. Super. Ct. 2012).

legal conclusions. For the above reasons, this court respectfully requests that the Superior court affirm this Court's denial of the Omnibus Pre-trial Motion.

## **CONCLUSION**

Therefore, this Court respectfully requests that the Superior Court affirm the trial court's order denial of the Omnibus Pretrial Motion and find Appellant's other arguments meritless

**BY THE COURT:**

Dated: February 22, 2017      **HARRY M. NESS, JUDGE**