J-S08030-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL JORDAN MASON | : | |
| | : | |
| Appellant | : | No. 508 MDA 2020 |

Appeal from the Judgment of Sentence Entered January 24, 2020,
in the Court of Common Pleas of Northumberland County,
Criminal Division at No(s):  CP-49-CR-0000019-2016.

BEFORE:   STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED JUNE 15, 2021**

Michael Jordan Mason appeals from the judgment of sentence imposed following the denial of his suppression motion and his plea of *nolo contendere* to aggravated assault.  Upon review, we affirm.

The facts, summarized from the court's findings, follow.  On September 22, 2015, Officer Raymond Siko of the Shamokin Police Department was called to investigate an assault of a one-year old child.  At the time of the incident Mason was caring for the child.  After gathering information surrounding the incident from others, Officer Siko went to talk with Mason.  Mason agreed to go with him to the police station just a few blocks away and give a statement. Once there, Mason was given **Miranda**[1] warnings from the standard form

---

[*] Former Justice specially assigned to the Superior Court.

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

which Mason then signed. Mason agreed to talk without an attorney present, and he and the officer began to discuss what happened.

At first, Mason was relaxed. He indicated that he did not know how the child got injured. When the officer told Mason that he talked to the doctors at the hospital about the child's injuries and that those kind of injuries do not just happen, Mason sat back in his chair, became pale, and his eyes rolled back in his head. It appeared that he passed out.

Mason quickly recovered and was not confused, disoriented or sluggish. Officer Siko, who was a certified emergency medical technician, found this unusual for someone who passed out and then recovered. The paramedics, who had been called, checked Mason's vital signs, which were good, and found him to be awake, alert, and oriented to person, place, and time. Mason refused further medical treatment and remained at the station.

Officer Siko reminded Mason of what was happening, and Mason confirmed that he knew his rights. They then continued the interview, and Mason explained what happened. He had been drinking gin and was drunk.[2] While he was playing a video game, the child was crying and it made him angry. Mason admitted that he used some force to try to get the child to stop crying. He further admitted that he dropped the child approximately three

_____

[2] We note that in its findings, the court indicated that the officer did not recall Mason telling him that he had been drinking. Trial Court Order 5/4/18, at 2. However, the record indicates that Mason told Officer Siko this. N.T. 9/8/17, at 21. Instead, it was the paramedic who did not recall if Mason told him he had been drinking. *Id.* at 38.

feet into a pack and play. The interview lasted for about 45 minutes. After the interview, Mason completed and signed the voluntary statement form. The police arrested and charged Mason with several offenses.

Mason filed a motion to suppress the statements he made during the police interview, claiming that they were not voluntary. At the suppression hearing, Mason testified that he vaguely recalled collapsing during the interview and remembered waking up. However, he did not recall answering Officer Siko's questions thereafter. Mason claimed that he felt pressured to admit to something he did not want to. He further claimed that Officer Siko told him "we know you did this." The court denied Mason's motion. Thereafter, Mason entered a plea of *nolo contendere* to aggravated assault, while preserving his right to appeal the denial of his motion to suppress. The court sentenced Mason to 78 months to 20 years of incarceration.

Mason filed this timely appeal. Mason and the suppression court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Mason asks us to review whether the suppression court erred in denying his motion to suppress the statements he made during the police interview. Mason's Brief at 7, 10-11. Specifically, Mason argues that a review of the totality of the circumstances demonstrates that his confession was not voluntary. *Id.* According to Mason, his age, education, and mental health support this contention. Additionally, he emphasizes that he had been drinking prior to the interview with the police and passed out during it, after

which the police continued to question him. *Id.* at 11-12. Mason therefore maintains that the court should have suppressed his statements. *Id.*

Our standard of review for an appeal from a denial of a motion to suppress is as follows:

> In reviewing a suppression ruling, we are bound by the suppression court's factual findings, unless they are without support in the record. We may reverse the legal conclusions reached by the suppression court, however, if they are in error. Thus, our standard of review of the legal conclusions reached by the suppression court is *de novo.* Where, as here, the defendant is appealing the ruling of the suppression court, we consider only the evidence of the prosecution, and so much of the evidence for the defense which remains uncontradicted when fairly read in the context of the [suppression] record.

*Commonwealth v. Galvin*, 985 A.2d 783, 795 (Pa. 2009) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006) (citation omitted). This Court's scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1085 (Pa. 2013).

In particular, "[w]hen deciding a motion to suppress a confession, the touchstone inquiry is whether the confession was voluntary." *Commonwealth v. Nester*, 709 A.2d 879, 882 (Pa. 1998). "It is well established that when a defendant alleges that his confession was involuntary, the inquiry becomes not whether the defendant would have confessed without the interrogation, but whether the interrogation was so manipulative or

coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess." ***Commonwealth v. Yandamuri***, 159 A.3d 503, 525 (Pa. 2017) (quoting ***Commonwealth v. Sepulveda***, 55 A.3d 1108, 1137 (Pa. 2012)). The Commonwealth has the burden of proving by a preponderance of the evidence that the defendant confessed voluntarily. ***See Commonwealth v. Harrell***, 65 A.3d 420 (Pa. Super. 2013).

Voluntariness is determined by the totality of circumstances surrounding the confession. ***Yandamuri***, 159 A.3d at 525. This Court will consider the following factors, *inter alia*, when determining whether a statement was made voluntarily: "the duration and means of the interrogation; the defendant's physical and psychological state; the conditions attendant to the detention; the attitude exhibited by the police during the interrogation; and other factors which may serve to drain one's power of resistance to suggestion and coercion." ***Commonwealth v. Bruno***, 154 A.3d 764, 790 (Pa. 2017) (quotation omitted). Other relevant factors include: "the accused's age and level of education and experience; his extent of previous experience with the police; whether the accused was advised of his constitutional rights; whether he was injured, ill, drugged, or intoxicated when he confessed; whether he was deprived of food, sleep, or medical attention[;] and whether he was abused or threatened with abuse." ***Yandamuri***, 159 A.3d at 525.

Upon our review, we conclude that the suppression court did not err in denying Mason's motion suppress his statements to police. In reaching its decision, the court explained:

> [Mason's] testimony was not credible as to his statements made after he recovered from passing out. The circumstances surrounding the interrogation and the confession do not suggest that the atmosphere or circumstances were so manipulative or oppressive as to rob [Mason] of his freedom of choice to confess. [Mason's] refusal of medical service, [his] willingness to continue answering questions, and [] familiarity with the procedures of law enforcement lend this [c]ourt to believe [Mason's] confession was entered knowingly, intentionally, and voluntarily.

Trial Court Order 5/4/18, at 2 (numbered paragraphs omitted). It is evident that the suppression court weighed the relevant factors and considered the totality of the circumstances. Notably, the court did not find Mason's claims that the officer accused him of assaulting the child and pressured him to confess credible. The court further did not believe that Mason was disoriented after he passed out and could not remember what happened, particularly whether he was asked if he still understood his rights. The suppression court as the factfinder determines the credibility of witnesses and the weight to give their testimony. *Gallagher*, 896 A.2d at 585.

Furthermore, although Mason had been drinking prior to his interview and passed out during it, these are only two factors of many to consider. Importantly, there was no indication that these factors rendered him incapable of making a knowing and voluntary confession. Officer Siko stated that Mason's answers during the interview were clear and that Mason understood his rights and what he was asked. Mason was not impaired or under the influence of alcohol at that point. The paramedic also indicated that Mason was alert and oriented when he examined him. Mason continued with the interview. Accordingly, Mason is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/15/2021